### SOLOMONS v. AMERICAN BUILDING & LOAN ASS'N.

(Circuit Court, N. D. Georgia. March 6, 1902.)

No. 1,111.

**1. INTEREST—DEBTS OF INSOLVENT CORPORATION—EFFECT OF RECEIVERSHIP.**

Where a court of equity has taken possession of the property of an insolvent corporation for distribution, a creditor is not entitled to interest on his claim after the appointment of the receiver, although he is given priority by reason of his having a lien on property of the corporation, when there has been no attempt to enforce such lien, but the claim is paid from the general funds in the hands of the receiver.

**2. BUILDING AND LOAN ASSOCIATIONS—PREFERENCES IN INSOLVENCY—WITHDRAWING MEMBERS**

Shareholders in a building and loan association to whom certificates of indebtedness were issued on their withdrawal, for the value of their stock, ceased to be shareholders and became creditors, and, on a subsequent winding up of the association in insolvency, they are entitled to payment before distribution is made to shareholders, in the absence of any evidence of fraud in the transaction.

**3. SAME—HOLDERS OF FULL-PAID STOCK.**

Holders of so-called full-paid stock issued by a building and loan association in accordance with its by-laws, differing from ordinary stock only in that it is paid for in advance, and is to receive a fixed dividend instead of sharing pro rata in the profits of the association, are shareholders, and not creditors, and on the winding up of the association in insolvency are not entitled to preference over the holders of installment stock.

In Equity. On exceptions to master's report.

H. A. Alexander and C. J. Haden, for plaintiff.

Clyde L. Brooks, for defendant.

Westmoreland Bros., for receiver.

Tompkins & Alston, J. H. Porter, and J. L. Travis, for interveners.

NEWMAN, District Judge. This case is now before the court on exceptions to the report of the special master, to whom it was referred mainly for the purpose of ascertaining the relative priorities of the claimants against the fund in the hands of the receiver. The finding of the special master that the Bank of Commerce, formerly the Bates-Farley Savings Bank, is entitled to priority over other claimants to the fund, except as against the cost of administration,

¶ 2. See Building and Loan Associations, vol. 8, Cent. Dig. § 88.

is correct. I am not satisfied, however, that this claim should bear interest since the appointment of the receiver. There is some ground for the contention that interest should run since the appointment of the receiver. The main reason for such allowance would be the fact that they have a lien on real estate. They are not subjecting this real estate, however, to their debt, but are being paid, by the special master's report, out of the general fund in the hands of the receiver.

In Thomas v. Car Co., 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663, it is said that:

"As a general rule, after property of an insolvent passes into the hands of a receiver or of an assignee in insolvency, interest is not allowed on claims against the funds. The delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate,"—citing Williams v. Bank, 4 Metc. (Mass.) 323; Thomas v. Minot, 10 Gray, 263.

In Bowman v. Wilson (C. C.) 12 Fed. 864, Circuit Judge McCrary says:

"Interest is allowed upon the ground that the debtor is in default and has the use of claimant's money. It is never allowed where, by the order of a court of competent jurisdiction, or by the interposition of the law, or the act of the creditor, payment of a debt has been prevented. During the continuance of such prevention the interest does not run. If a fund is in the custody of the law,—in the possession of a court,—and cannot be paid out without the order of such court, it does not ordinarily bear interest. I know of no principle of law or equity upon which the interest claimed can be allowed at the expense of the general unsecured creditors, who are certainly in no wise responsible for the delay in making the final order of distribution,"—citing 1 Am. Lead. Cas. (3d Ed.) 516 et seq.

The cases of Trust Co. v. Condon, 14 C. C. A. 314, 67 Fed. 84, Central Trust Co. v. Richmond, N., I. & B. R. Co., 15 C. C. A. 273, 68 Fed. 90, 41 L. R. A. 458, and Jourolmon v. Ewing, 29 C. C. A. 41, 85 Fed. 103, would draw a distinction between claims of creditors with and without liens, in favor of lien creditors, which might be applicable here if the bank was attempting to enforce its lien. While the special master does find that the Bank of Commerce is entitled to a special lien on the property described in the loan deed which was given to secure the loan, he recommends that they be paid out of the general fund in the hands of the receiver.

Taking the entire facts of the case together, I do not believe this claim should draw interest after the appointment of the receiver and the sequestration of the assets of the association.

The next question is as to the rights of the holders of script determined under the Lowry intervention. The holders of this script had given notice of a desire to withdraw from the association, and the script was issued for the withdrawal value of their stock. The relation of the scriptholders to the association as stockholders was terminated, and the relation of creditor created, when the script was issued. This being the condition when the affairs of the association came to be administered in court by the appointment of a receiver, the rights of these scriptholding creditors could only be defeated by showing fraud in the transaction, or an intent and effort to give them a preference over other stockholders. Nothing of that kind is shown in this case. It seems to have been an ordinary business transaction in which the

withdrawing stockholders (the association having no cash on hand) were given the right to take script, or to take at a fair valuation real estate of the association for their claims. These scriptholders elected to take the script of the association, and took their chances. There is nothing whatever in the evidence which would justify the court in annulling the settlement and restoring their relation of stockholders in the association. The transaction which they made with the association might or might not have been advantageous. They took the risk on that, and if it now inures to their benefit it is simply the result of a business arrangement which was fair at the time and which the court should uphold. The special master gave this script preference next in order to the claim of the Bank of Commerce. In this he was right.

The next question is as to the rights of holders of stock called "Class C Stock." This is fully discussed by the special master in his report, in which he classes it with other stock of the association, and gives it no preference. The stock on which the issue was raised was that of S. S. Solomons. The certificate calls the stock "Class C, full-paid, guarantied interest, coupon stock, of the par value of one hundred dollars per share, of the full-paid capital stock thereof, fully secured, and all payments of interest guarantied by first deeds of trust and first mortgages on real estate worth at least double the amount invested therein." No deed of trust or mortgage was given as provided in the certificate of stock. This stock was issued under a by-law of the association, as follows:

"Sec. 3. Class C, full-paid, guarantied interest, coupon stock may be issued and sold at the price of one hundred dollars per share in advance. Said stock shall bear a guarantied interest of 7 per cent. per annum, payable semiannually, from the date of the certificate, out of the earnings of the association, and shall be nonassessable. In consideration of the holders of Class C stock receiving a guarantied interest in cash from the first earnings of the association and the withdrawal privileges accorded, they shall waive all right to participate in any greater dividends declared by the association than the stipulated rate specified in their certificates of stock. The balance of the net profits on such stock, after deducting such dividend, shall accrue to the association as profits. Class C stock may be withdrawn at any semiannual dividend period on thirty days' written notice to the secretary, subject to article VII, sec. 1, and the withdrawing member shall be entitled to receive payment of the purchase price of the stock withdrawn and any coupons matured and unpaid at the time of such notice."

It is contended for the holders of this stock that it is a debt against the association; that while it is called "stock" it is in effect a bond and an outstanding obligation of the association; that it was really a loan to the association of the amount at 7 per cent. per annum. This contention is not justified by the by-law or by anything in the certificate. The benefit that the holder of this stock was supposed to receive is contained in this language of the by-law: "Said stock shall bear a guarantied interest of 7 per cent. per annum, payable semiannually, from the date of the certificate, out of the earnings of the association, and shall be nonassessable." This stock had interest on the money invested by its holders guarantied. While the holders of the ordinary stock of the association, Class A, might receive greater profits, they took their chances, and any benefits they obtained were subject to the rights of this Class C stock to be first paid its interest at 7 per cent.

I find nothing whatever to show that it had any additional rights over Class A stock, except as to interest. If the interest had been earned, then as to that the stock would be entitled to a preference. Clearly nothing has been earned by the association since it ceased to pay interest on this stock, if, indeed, anything was earned before. The master found correctly as to the status of this Class C stock. Some reference was made on this hearing to the taxation of costs in the case. This taxation will be made when the amount of the cost is ascertained, as may seem proper and equitable.

## On Rehearing.

### (April 17, 1902.)

I have recently granted to counsel for the Class C stock referred to in the foregoing opinion a rehearing on the question as to the right of that stock to a preference over Class A stock. Counsel have earnestly urged that this court should be controlled by the decisions of the supreme court of the state, which it may be conceded are not in harmony with the decision rendered by this court. Cook v. Association, 104 Ga. 814, 30 S. E. 911, and the recently decided case of Cashen v. Association, 41 S. E. 51. It seems that the supreme court of Georgia in the case last cited itself realized the conflicting views of different courts on this question, for in closing the opinion it is said:

"This court was, when it undertook to deal with the Cook Case, under the necessity of taking position one way or the other upon the question at issue. We then held that the holder of a certificate like that of Cashen was a creditor of the association. To this view we have adhered in later cases, and are content with its correctness. Applying to the case in hand the doctrine to which we stand committed, it necessarily results that the judge erred in setting aside the auditor's ruling on the point in controversy."

In the case of Alexander v. Association, decided in this court by Judge Pardee, 110 Fed. 267, the exact question was made. I have carefully examined the report of the master in that case. He goes at length into the question, cites the case of Cook v. Association, supra, and, notwithstanding that decision, concludes that stock substantially like that now in question has no preference; in other words, that the holders of the stock are not creditors of the association, as distinguished from its ordinary installment shareholders. Judge Pardee, in reviewing the report of the master, says:

"The special master has submitted an elaborate report, finding substantially that the holders of full-paid stock and the holders of stock in the different classes who have duly given notice of withdrawal stand upon the same footing of priority as other stockholders. * * * To this report certain holders of full-paid stock, and certain holders of stock upon which notice of withdrawal had been given prior to the appointment of the receiver, filed exceptions; the former claiming that they are not stockholders at all, but creditors, and entitled to be paid by preference over any and all stockholders, and the latter claiming that, as they had given notice of withdrawal prior to the appointment of the receiver, they are creditors with a lien upon the funds of the association, and entitled to be paid by preference over all stockholders. After an elaborate examination and full consideration, I am satisfied that the master's finding in regard to these two classes of stockholders is correct, and the authorities cited by him fully sustain his position. As the association is in the hands of a receiver, to be wound up and

liquidated because of the impossibility to carry out the original scheme and purpose, it would be rank injustice to allow one class of investors to be paid in full at the expense of the other investors equally innocent of all fault in the matter."

In view of this decision by Judge Pardee in which he declined to follow the decisions of the supreme court of the state, although brought to his attention, I shall, of course, not do so, especially as I entertain the views heretofore expressed. The supreme court of the state in its decisions was not construing any statute of the state, but simply expressing its opinion upon an interesting question of general law, and while, of course, highly persuasive, it is not controlling.

It is urged, however, that in the case of Bottom v. National Railway Building & Loan Association, in this court, a different rule was adopted by Judge Pardee by reason of his approval of the master's report. So far as I can find that any exceptions were made to the master's report or any question was brought to the attention of the judges of this court similar to the question here involved, the exceptions were disposed of by a consent order. It is not at all clear that the debenture stock there referred to by the master was similar to the Class C stock in question here, but, even if such were the case, the clear decision in the Alexander Case will necessarily be controlling.

In a recent decision by Judge Morris in the United States circuit court for Maryland, in Coltrane v. Association, 110 Fed. 281, the following language is used on the question at issue here:

"Nearly all building associations draw up their by-laws and make their agreements upon the assumption that they will succeed. They promise to each class of persons with whom they seek to do business those things which are likely to prove most attractive to people so situated. When disaster overtakes the association each class of its stockholders insists that the association shall be required to carry out its contract with them, no matter what happens to its agreements with the other classes of stockholders. In any such case, to enable any class of stockholders successfully to assert a right to be paid in full in preference to other stockholders, they must rest their claim upon a positive, unambiguous contract, specifically giving them that priority."

Judge Morris' opinion is interesting for the reason that it discusses the decision by this court in the Alexander Case, and of the supreme court of Georgia in the Cook Case.

The conclusion reached in the former opinion, filed March 6, 1902, that Class C stock and Class A stock stand on a parity, and that the former is not entitled to any preference, is adhered to.