FIRST NATIONAL BANK OF HOUSTON V. J. I. CAMPBELL COMPANY
ET AL.

Decided November 30, 1908.

**1.—Receivership—Creditor—Interest and Attorney's Fee.**

A creditor holding a secured claim against an insolvent corporation in the hands of a receiver, is entitled to interest and attorney's fee upon his claim, when the note or other contract provides for the same, so far as the same can be paid out of the proceeds of the securities, to the date when the claim is paid by the receiver. No interest, however, should be allowed to be paid out of the general fund after the date of the appointment of the receiver unless there should be, after all the debts and expenses of the receivership are paid, a surplus to be returned to the stockholders of the corporation, in which case interest should be paid in full to date of payment out of such surplus, if not fully satisfied out of the proceeds of the security. The rule that interest ceases to

run when the court takes charge of the property, only applies in so far as a distribution of the assets in the hands of the receiver among the creditors is concerned, and can not be used to protect the corporation from full liability, if it be solvent.

**2.—Same—Same—Collateral Security—Attorney's Fee.**

A creditor of a corporation in the hands of a receiver, is entitled to recover attorney's fees stipulated for in notes held by him as collateral security for his main debt when it becomes necessary by reason of the insolvency of the corporation to place said notes in the hands of an attorney for collection.

**3.—Same—Contract for Attorney's Fee.**

A contract to pay attorney's fees is a contract of indemnity and not for liquidated damages. A creditor can only recover such portion of the attorney's fee provided for as he has obligated himself to pay or, in the absence of such contract, such as is reasonable.

**4.—Attorney's Fee—Necessity for Suit.**

When the sole stipulation in a note is to pay certain attorney's fee if the note is placed in the hands of an attorney for collection, the payee or other holder of the note is entitled to collect the fee if the note is in fact placed in the hands of an attorney for collection and a necessity existed for such action. And this, though the note was not due when so placed.

Appeal from the District Court of Harris County. Tried below before Hon. W. P. Hamblen.

*L. B. Moody,* for appellant.—When interest is expressly provided for in a note, it becomes part of the debt, and is recoverable as of right. It is an integral part of the debt, as much so as the principal debt itself, and in such cases the court has no authority to refuse to enter judgment for the interest stipulated for in the contract. Constitution of Texas, art. 16, sec. 11; Rev. Stat., arts. 3097, 3098, 3099, 3100; Jones v. United States & Mexican Trust Co., 105 S. W., 330; Brazelton & Johnson v. J. I. Campbell Co., 108 S. W., 773; Central Trust Co. v. Condon, 67 Fed. Rep., 98; Richmond & I. Const. Co. v. Richmond N. I. & B. R. Co., 68 Fed. Rep., 112-116; Jourolmon v. Ewing, 85 Fed. Rep., 105, 106; Redfield v. Ystalyfera Iron Co., 110 U. S., 174; United States v. Sanborn, 135 U. S., 271; Redfield v. Bartels, 139 U. S., 694; Thomas v. Western Car Co., 149 U. S., 95; 22 Cyc., p. 1570, sec. 7, subdiv. B; 2 Amer. & Eng. Ency. of Law (1st ed.), p. 380, par. 3.

In the distribution of the proceeds of a common security between liens of different priorities, interest can not be stopped on the amount of the superior lien until its satisfaction, even in a case where the estate is insolvent and there is no contract to pay interest. Same authorities.

The court having found that all of said notes provided that ten percent additional on the full amount due should be paid if the same were placed in the hands of an attorney for collection, and that all of said notes were placed in the hands of intervener's attorney for collection on the day the receiver was appointed in this cause, and that intervener agreed with said attorney to pay him the ten percent attorney's fees provided for in said notes, and that it was necessary for intervener to collect said notes by intervention in this cause, and that said notes were secured by a lien expressly reserved

in the deed from the J. I. Campbell Company to the Tyler County Land & Lumber Company to secure the payment of said notes, together with principal, interest and attorney's fees, the court ought to have included the amount of said attorney's fees in the judgment rendered. Dunovant's Estate v. Stafford & Co., 81 S. W., 101; Robertson v. Holman, 81 S. W., 326, 327; Texas Land & Loan Co. v. Robertson, 85 S. W., 1020; Smith v. Pickham, 28 S. W., 565, 566; Simmons v. Terrell, 75 Texas, 275; Stansell & Younger v. Cleveland, 64 Texas, 666; Martin Brown Co. v. Perrill, 77 Texas, 206.

*Spotts & Matthews,* for appellee.—The claims of creditors were presentable when the receivers were appointed; that date fixes their status and amount regardless of when they were in fact presented by intervention or otherwise, and no interest thereafter accruing can be allowed. Thomas v. Western Car Co., 149 U. S., 95; United States ex rel. White v. Knox, 111 U. S., 784; Grand Trunk Ry. Co. v. Central Vermont Ry. Co., 91 Fed. Rep., 569; People v. American Loan & Trust Co., 172 N. Y., 379, 65 N. E., 200; In re Garlington, 115 Fed., 999; Alderson on Receivers, p. 847; Bowman v. Wilson, 12 Fed. Rep., 864; Solomons v. American Bldg. and Loan Assoc., 116 Fed., 676; In re Jamison's Estate, 163 Pa. St., 143, 29 Atl., 1001; People v. Commercial Alliance Life Insurance Co. (N. Y.), 47 N. E., 968.

The property of the defendant companies having been by order of court taken from their possession and placed in the hands of a receiver, whereby they were prevented from using same in payment of their indebtedness, they are not liable for interest accruing during the time the property has been or may be in the hands of the receiver. Stevens v. Barringer, 13 Wend., 639; Osborne v. U. S. Bank, 9 Wheat., 738; Pillow v. Brown, 26 Ark., 248; Conn v. Penn., 5 Wheat., 424; 16 Am. & Eng. Ency. of Law, 1068 and 1069.

REESE, ASSOCIATE JUSTICE.—On February 14, 1905, at the suit of I. L. Campbell and S. M. Campbell, who represented themselves to be creditors and stockholders of each of the corporations named, S. F. Carter and W. H. Norris were appointed receivers of the J. I. Campbell Company, the Tyler County Land & Lumber Company, and the Warren & Corsicana Pacific Railway Company, upon allegations that each of said corporations was in imminent danger of insolvency. Carter having resigned, Norris was appointed sole receiver. The First National Bank of Houston filed its plea of intervention, claiming that the J. I. Campbell Company was indebted to it in a large amount, specifying the different items of indebtedness, and that said indebtedness was secured by certain promissory notes of the Tyler County Land & Lumber Company aggregating $90,000, which said notes were secured by a vendor's lien upon all the lands, mills and other property of said company, and the Campbell Company indebtedness was further secured by 508 shares of the capital stock of the Yellow Pine Lumber Co., and 993 shares of the capital stock of the Warren & Corsicana Pacific Railway Company, each of said shares of the face value of $100.

The receiver answered by general and special exceptions and general denial, and specially denied the liability for interest after the appointment of the receiver, and for attorney's fees. The claim of intervener included ten percent attorney's fees on the amount of the indebtedness of the Campbell Company, and also upon the collateral notes of the Lumber Company, and interest on the notes according to the contract rate.

The intervention was referred to the Master, who recommended the allowance of the claim of the bank against the Campbell Company, including interest and attorney's fees, and also of the claim on the collateral notes of the Lumber Company, including interest and attorney's fees. The receiver excepted to so much of the Master's report as allowed interest accruing after the appointment of the receiver, and to so much of the report as allowed any attorney's fees on either the principal notes of the Campbell Company or the collateral notes of the Lumber Company. Upon a hearing of the Master's report and the exceptions thereto, the court sustained exceptions to so much of the report as allowed interest on any of the notes after the appointment of the receiver, and attorney's fees on the collateral notes of the Lumber Company, rendering judgment for principal and interest only to the date of the appointment of the receiver, and attorney's fees only upon the original indebtedness of the Campbell Company. From this judgment the bank appeals and the rulings complained of are presented by proper assignments of error. The receiver also by cross-assignment complains of the ruling of the court in allowing attorney's fees upon the principal indebtedness of the Campbell Company.

The trial court filed its conclusions of fact and law, which are very full. None of the findings of fact are attacked by either party.

The facts, so far as is material to a decision of the questions presented by this appeal, are substantially as follows:

The Campbell Company executed to appellant its certain promissory notes at different times aggregating the sum of over $100,000 and bearing interest, some of them from date and others from maturity, until paid, at different rates, some at seven, some at eight, and some at ten percent per annum. Of these notes some matured before and the others shortly after February 14, 1905, which was the date of the appointment of the receiver. There was also a small amount of indebtedness other than that evidenced by the notes.

The notes provided for the payment of interest until paid, some from date and others from maturity, at different rates percent, and each of them also contained a provision for the payment of ten percent additional on the full amount due if the same was placed in the hands of an attorney for collection. The dates, amounts, etc., of the different items of indebtedness are fully set out in the findings, but a more specific finding is not necessary here.

The Campbell Company transferred and assigned to appellant, as collateral security for any and all indebtedness then existing or that might thereafter exist, 508 shares of the capital stock of the Texas Yellow Pine Lumber Company and 993 shares of the capital stock

of the Warren & Corsicana Pacific Railway Company, each share of said assigned stock of the face value of $100.

The Campbell Company had, on September 30, 1904, sold and conveyed to the Tyler County Land & Lumber Company certain land, mills and other property, fully described in the findings, the consideration being $115,811.50, of which $25,811.50 was paid in cash, and for the balance the Lumber Company executed its forty-five promissory notes for $2,000 each, dated September 30, 1904, payable to the order of the Campbell Company, with interest from date until paid at eight percent per annum, and also providing for the payment of ten percent additional on the full amount due if placed in the hands of an attorney for collection. There was reserved in the deed a lien on the property conveyed to secure the payment of said notes, "together with the principal, interest and attorney's fees." The first two of said notes matured respectively on the 1st and 15th of December, 1904, and the remainder matured respectively one each on the 1st and 15th of each succeeding month up to and including the 1st of October, 1906. These notes of the Lumber Company were pledged and delivered by the Campbell Company to appellant primarily for the security of a certain note for $32,500, given by it to appellant, being one of the promissory notes constituting the indebtedness of the Campbell Company to appellant heretofore referred to, and secondarily, for the security of all other indebtedness due by it to appellant.

On the day the receiver was appointed, all of the notes aforesaid, both the principal notes and the collateral notes of the Lumber Company, were by appellant placed in the hands of an attorney for collection, and appellant agreed with said attorney that he should have the ten percent attorney's fees provided in the notes. The court finds that it is necessary for the appellant to collect said notes by intervention in this cause. All of the notes are unpaid.

The first four assignments of error present the question of the refusal of the court to allow interest upon the promissory notes of the Campbell Company and the collateral notes of the Lumber Company after the date of the appointment of the receiver. Appellant's contention can be best expressed in the language of his two propositions under these assignments.

"When interest is expressly provided for in a note, it becomes part of the debt, and is recoverable as of right. It is an integral part of the debt, as much so as the principal debt itself, and in such cases the court has no authority to refuse to enter judgment for the interest stipulated for in the contract."

"In the distribution of the proceeds of a common security between liens of different priorities, interest can not be stopped on the amount of the superior lien until its satisfaction, even in a case where the estate is insolvent and there is no contract to pay interest."

The contrary view contended for by appellee and adopted by the court is thus expressed in two counter-propositions:

"The claims of creditors were presentable when the receivers were appointed; that date fixes their status and amount, regardless of

when they were in fact presented by intervention or otherwise, and no interest thereafter accruing can be allowed."

"The property of the defendant companies having been, by order of court, taken from their possession and placed in the hands of a receiver, whereby they were prevented from using same in payment of their indebtedness, they are not liable for interest accruing during the time the property has been, or may be, in the hands of the receiver."

We have been unable to deduce any fixed and settled rule applicable to the questions presented from the authorities. The question, so far as we have been able to find, is one of first impression in this State, with the exception of certain expressions in the opinion by Chief Justice Fisher in the case of Brazelton & Johnson v. J. I. Campbell Co., 49 Texas Civ. App., 218. The question arose there upon an appeal from an order in this receivership by an intervening creditor. The claim of the intervening creditor was founded upon a certain instrument in the form of a bill of sale to them by the Campbell Company of certain lumber, for the expressed consideration of $10,000, which had been sold by the receiver, who held the proceeds. They prayed, in the alternative, that if the instrument was not a bill of sale that it be construed as a mortgage on the lumber in question to secure the $10,000. The trial court held the instrument to be a mortgage and decreed a foreclosure for $10,000, but refused to allow any interest. None was provided in the contract. The Court of Civil Appeals held to the view that interest should be allowed to date of payment so far as this could be satisfied out of the proceeds of the lumber, but that as to payment out of the general assets interest ceased to run when the property was taken in charge by the court through a receiver. No authorities are cited, but the court evidently had in view the difference between the payment of secured debts out of the proceeds of the security and of unsecured debts out of the general assets upon a ratable distribution among the general creditors, all standing upon the same footing, referred to in Central Trust Co. v. Condon (67 Fed., 98); Richmond & I. Const. Co. v. Richmond N. I. & B. R. Co. (68 Fed., 112), and Jourolman v. Ewing (85 Fed., 105).

In the case of Central Trust Company v. Condon, decided by the Circuit Court of Appeals of the United States, the facts are quite complicated and the opinion involves a discussion of many different questions. The point in question arose upon the allowance of interest upon the claim of a principal contractor, which was a preferred claim, secured by lien, and constituted the fund out of which certain subcontractors' claims were to be paid, being insufficient, however, to pay them in full. It was held that interest should be allowed on this claim to satisfaction and that the security and priority of the lien attached as well to the interest as the principal. The court says: "This is not a case where the distribution is to be made *pro rata* between the lienholders and bondholders, in which case, of course, interest is not to be calculated after the time of the sequestration of the property for sale and distribution so long as the claims can not be paid in full. In the distribution of the pro-

ceeds of a common security between liens of different priorities, we know of no principle by which interest can be stopped on the amount of the superior lien until its satisfaction. As between the bond-holders and the lienholders, the lienholders are entitled to interest to the day of payment."

The question also arose in Richmond & I. Const. Co. v. Richmond N. I. & B. Co., a case decided by the same court, the court adhering to the view expressed in the Condon case. In the opinion in this case, Thomas v. Western Car Co. (149 U. S., 95), and White v. Knox (111 U. S., 784), relied upon by appellee in this case, are referred to, and the holding in those cases interpreted as not in conflict with the holding in either the Condon case or the case then under consideration. The court says:

"The language relied upon in support of the decree disallowing interest, from the opinion in Thomas v. Western Car Co., that 'as a general rule, after property of an insolvent passes into the hands of a receiver, or of an assignee in insolvency, interest is not allowable on the claims against the funds,' was not a point upon which that case turned, and was doubtless intended to apply only to a case where the fund is insufficient to pay all, and the creditors are all of the same rank, as in the distribution of the assets of an insolvent bank, as in White v. Knox, 111 U. S., 784, 4 Sup. Ct., 686, and Bank v. Armstrong, 8 C. C. A., 155, 59 Fed., 372. This is not a case of the distribution of an insufficient fund among lienors of the same rank. The lien claims of the subcontractors are by the statute preferred over the mortgage, and the bondholders are entitled only to that which remains after senior liens are satisfied."

In Jourolmon v. Ewing, *supra,* a case decided by the same court, it was again held that "when a fund in court is subject to lien claims of different priorities, the holders thereof are entitled to interest to the date of the decree."

We find the general principle stated in several cases as quoted from the opinion of the Supreme Court of the United States in Thomas v. Western Car Co. (Bowman v. Wilson, 12 Fed., 864; Grand Trunk Ry. Co. v. Central Vermont Ry. Co., 91 Fed., 569).

The distinction between creditors with and without liens, in favor of lien creditors to be paid principal and interest so far as it can be done out of the proceeds of the security, is recognized in Solomons v. American Building & Loan Assn. (116 Fed., 676), cited by appellee. Interest, however, was refused after the appointment of the receiver on the ground that the creditor was not seeking to enforce his lien, but to be paid out of the general fund.

With the exception of People v. American Loan & Trust Co. (172 N. Y., 379, 65 N. E., 200), none of the cases, we think, cited by appellee deny directly the distinction referred to or the right of a lien creditor of an insolvent debtor, after receiver is appointed, to be paid interest as well as principal to satisfaction so far as this can be done out of the proceeds of the security. The case last referred to was decided by the Court of Appeals of New York, and the question here presented is considered in an able and exhaustive opinion, holding, as we construe it, that the appointment of a receiver stops

the running of interest on all claims preferred or unpreferred, se-cured as well as unsecured. The question arose upon certain claims of Savings Banks against the American Loan & Trust Co., an in-solvent corporation, in the hands of a receiver, whose charter pro-vided that in case of dissolution of the company debts due to Savings Banks (with some others named) should have a preference. It was held that interest did not run upon the preferred claims after the dissolution of the corporation and the appointment of a receiver, or, as it is expressed in the opinion, "after the corporation let go and the law took hold."

This case may possibly be distinguished from the one under con-sideration upon the terms of the statute granting the preference. As .expressed in the opinion, "As the statute does not say that pre-ferred claims shall be paid with interest to the date of payment, the courts should not, because the claims of substantially all the creditors, both preferred and unpreferred, were all alike in origin, for they were created by the deposit of money; and preference in derogation of the common law should not be extended by construction beyond the express commands of the statute." We are not inclined, however, to distinguish this case, but to construe it as directly sup-porting the contention of appellee in the present case. In such case we prefer to follow the decisions of the Federal Circuit Court of Appeals, heretofore considered, as more in accord with established general principles.

Appellant in the present case is in no way responsible for the delay in payment of its debt. It had prudently taken the precaution to take security for interest as well as principal. Under all of the authorities the interest contracted for is a part of the debt, as much so as the principal. (16 Am. & Eng. Ency. of Law, 1096; Redfield v. Ystalyfera Iron Co., 110 · U. S., 174.) Other creditors have no interest in the lien property until the secured debt is entirely satis-fied insofar as it is a lien on the property. Their interest is only in the surplus, if any. We are not disposed to hold that appellant can be deprived of this advantage to the fullest extent which his con-tract gives to him, in favor of the general creditors, by the cir-cumstance that his debtors, the Campbell Company and the Lumber Company, have become insolvent or in danger of insolvency, and in consequence their properties placed in the hands of a receiver. For these consequences appellant is in no way responsible. It would be an entirely arbitrary rule, and we think an unjust and inequitable rule, that would deprive him of the advantage in the distribution of the proceeds of the security, which his contract, a valid, fair and reasonable contract, gives him. As we have said, we find this view supported by respectable authority which we are disposed to follow, instead of the contrary view, even supported by the eminent authority of the Court of Appeals of New York, referred to, if in fact that case can not be distinguished as suggested.

Our conclusion is that the court erred in sustaining the exceptions to the Master's report in the matter of the allowance of interest on the principal notes of the Campbell Company and the collateral notes of the Lumber Company, and that such interest should be al-

lowed and paid, so far as it can be done out of the proceeds of the securities, to date of payment. No interest, however, should be allowed to be paid out of the general fund after the date of the appointment of the receiver unless there should be, after all the debts and expenses of receivership are paid, a surplus to be returned to the stockholders of the respective corporations, in which case interest should be paid in full to date of payment out of such surplus, if not fully satisfied out of the proceeds of the securities. The rule, where applicable, that interest ceases to run when the court takes charge of the property by a receiver, only applies insofar as a distribution of the assets in his hands among the creditors is concerned, and can not be used to protect the corporation from full liability, if it proves to be in fact not insolvent. The assignments of error referred to must be sustained.

The fifth, sixth and seventh assignments of error present the question of the right of appellant to recover attorney's fees as part of his debt, on the collateral notes of the Tyler Land & Lumber Company. The court found that each of these notes provided for the payment of ten percent additional on the full amount due "if placed in the hands of an attorney for collection; that they were placed in the hands of an attorney for collection on the day the receiver was appointed; that appellant agreed with the attorney to pay him the ten percent as attorney's fees, and that it was necessary to intervene in this suit in order to collect the same." It was also found that the lien given by the Lumber Company was to secure the payment of the notes, principal, interest and attorney's fees. The trial court refused to allow the attorney's fees on these notes. This, we think, was error. When under the stipulations of the contract, the notes were placed in the hands of an attorney for collection the attorney's fees became a part of the debt. (Martin Brown Co. v. Perrill, 77 Texas, 206.) They were expressly secured by the lien. No question is made of the reasonableness of the amount, except that it would be unreasonable to allow any attorney's fees on the collateral notes after allowing attorney's fees on the principal notes.

It has been held by this court that a contract to pay attorney's fees is a contract of indemnity, and not for liquidated damages; that the creditor can only recover such portion of the attorney's fees provided for as he has obligated himself to pay, or in the absence of such contract, such as are reasonable. But if he has agreed with the attorney to pay the entire amount stipulated in the notes, in the absence of fraud or collusion, the debtor could not defeat the collection of this amount on the ground that it was unreasonable. (Dunovant's Estate v. Stafford, 81 S. W., 103; Robertson v. Holman, id., 327.) Under these authorities appellant had a right, under the stipulations of the Lumber Company notes, to contract with his attorney to allow him ten percent attorney's fees upon all the notes, which he did, and we think this amount should be added to the principal and interest of said notes. The fact that some of the notes were not due at the time of the appointment of the receiver should not, it seems to us, under the court's finding, make any difference. The stipulation in the notes was to pay the ten

percent "if placed in the hands of an attorney for collection." This was the sole condition. The court finds that it was necessary to do so, which is apparent. The Lumber Company can not claim exemption from liability upon the plain terms of its contract on the ground that its notes were transferred as collateral security for the notes of the Campbell Company, which are also charged with attorney's fees upon the express terms of its contract. In this regard the two contracts are distinct. There is no claim of fraud or collusion. We think the trial court erred in refusing to allow the attorney's fees on the Lumber Company notes.

By cross-assignment appellees question the correctness of the judgment in allowing attorney's fees upon the Campbell Company notes. What we have said is sufficient to indicate our views on the point. The cross-assignment is therefore overruled.

For the errors indicated the judgment is reversed and the cause remanded,. with instructions to the trial court to allow interest and attorney's fees upon all the notes in accordance with their terms to be satisfied out of the proceeds of the securities respectively. In the event said proceeds are insufficient to pay said entire amount, then the same shall be prorated between the amount due as principal, interest up to the date of the appointment of a receiver, and attorney's fees, and the amount of interest accruing after said date, in the proportion which said respective amounts bear to their sum, and the balance remaining due of the first amount only to be a charge on the general fund. But if there should be, after payment in full of all claims and expenses, a surplus to be returned to the stockholders, then all interest to date of payment shall be paid before any surplus is returned to them.

*Reversed and remanded.*