ATTORNEY GENERAL *vs.* SUPREME COUNCIL AMERICAN LEGION OF HONOR.

CARTER'S CLAIM.

Suffolk.    March 18, 22, 1910. — May 19, 1910.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Fraternal Beneficiary Corporation.    Receiver.    Judgment,* Foreign.    *Constitutional Law,* Full faith and credit to judgment of sister State.    *Interest.*

Where under R. L. c. 119, § 19, a receiver has been appointed to take possession of the property and effects of a fraternal beneficiary corporation and to settle its affairs, and there comes into the hands of the receiver an emergency fund of the corporation, that fund by §§ 7, 8 of the same chapter can be applied only for the payment of death benefits, and if a judgment has been obtained in another State upon a membership certificate against the corporation before the appointment of the receiver, which includes a sum due for a death benefit and also other sums allowed for other matters, although the whole amount of the judgment is entitled to full faith and credit, only the part of it which is for the death benefit can be paid by the receiver out of the emergency fund.

Where a receiver appointed under R. L. c. 119, § 19, to take possession of the

property and effects of a fraternal beneficiary corporation and to settle its affairs, has in his hands an emergency fund of the corporation, which by §§ 7, 8 of the same chapter can be applied only for the payment of death benefits, and the amount of this fund is much greater than the total amount of all the possible death claims against it, so that after paying all death claims which matured before the date of the receivership there will be a large surplus, this is no reason for allowing interest to be paid on the amounts of death claims after the date of the appointment of the receiver, the delay in their payment being a necessary incident of winding up the affairs of the order, and such interest will not be allowed.

INFORMATION, filed in the Supreme Judicial Court on August 12, 1904, by the Attorney General at the relation of the insurance commissioner, under R. L. c. 119, § 19, to restrain the defendant, a fraternal beneficiary corporation, from the further prosecution of business.

On August 12, 1904, Henry A. Wyman, Esquire, was appointed receiver under the provisions of the statute to take possession of the property and effects of the corporation, and to settle its affairs, subject to such rules and orders as the court might from time to time prescribe.

The case was previously before this court upon the receiver's third report, and a decision was rendered on June 20, 1907, which is reported in 196 Mass. 151. After the issuing of the rescript from that decision, on October 7, 1907, a decree was made by *Loring,* J., a part of which related to the claim of Arthur Carter and Joseph Carter, beneficiaries under the certificate of Thomas Carter, deceased.

The Carter claim was founded on a judgment obtained in the State of Texas. It amounted in all to $4,272.10, and was made up as follows :

1. The sum which remained unpaid upon the original certificate for $5,000 (upon which $1,900 had been paid on February 2, 1903) . . . . . .   $3,100 00
2. Interest upon said $3,100 from February 2, 1903, to May 23, 1904, the date of the judgment . . . . . . .   312 10
3. Allowance for " reasonable attorney's fees " (under the Texas statutes) . . .   500 00
4. Statutory penalty (under the Texas statutes)   360 00

$4,272 10

The portion of the decree of *Loring,* J., mentioned above as relating to the Carter claim was as follows:

[The receiver is instructed, — ]

" Seventh: That in the Carter claim, No. 142, so much of the judgment, entered in the Third District Court of Milam County, State of Texas, on May 23, 1904, in the action entitled Joseph Carter, et al., against Supreme Council, American Legion of Honor, as represents the amount due for a death benefit under the certificate of Thomas Carter, Arthur Carter and Joseph Carter, beneficiaries, to wit, thirty-one hundred dollars ($3,100) and interest thereon from February 2, 1903, at which time the said beneficiaries received nineteen hundred dollars ($1,900) to August 12, 1904, at which time the receiver was appointed, being two hundred and eighty-four dollars and seventeen cents ($284.17) interest, shall be allowed and paid out of the emergency fund now in the hands of the receiver.

" And this order is made without prejudice to the right of the claimants to contend that they are entitled to payment of the balance of said judgment, viz., the five hundred dollars ($500) reasonable attorney's fees, and the three hundred and sixty dollars ($360) statutory penalty, being eight hundred and sixty dollars ($860), in all, as provided by the Revised Statutes of Texas, of 1895, Article 3071, out of any general fund now or which may hereafter come into the possession of the receiver.

" And this order is also made without prejudice to the rights of all death claimants whose claims have heretofore been allowed, or which may hereafter be allowed, to contend that they are entitled to interest on the amount of said claims from and after said August 12, 1904, up to the date of the payment thereof."

From this decree the claimants, Arthur Carter and Joseph Carter, appealed, so far as it was possible for them to do so.

Thereafter a question arose between the receiver and the claimants as to the actual amount to be paid by the receiver under the decree. The receiver presented to *Loring,* J., the question whether he should deduct, from the amount to be paid, a certain amount called " the unpaid balances of assessments and interest thereon," being the difference between the amount of assessments at the $5,000 rate and assessments at the $2,000 rate for the period between October 1, 1900, and the date of the

death of the certificate holder, Carter. The receiver obtained instructions from the justice as follows :

" The receiver is instructed that the judgment as allowed in said decree of October 7, 1907, being entitled to full faith and credit as a judgment of a court of the State of Texas, (as having been rendered prior to the appointment of the receiver in this cause,) is not to have deducted therefrom the unpaid balances of the assessments, as set out in the receiver's request for instructions, the deduction of such balances of assessments, heretofore ordered by this court, relating only to those claims not in the form of judgments obtained against the order prior to the appointment of the receiver."

The last quoted interlocutory decree was entered on December 14, 1907, and on January 9, 1908, the receiver paid to the claimants the sum of $3,384.17, made up as follows:

Balance unpaid on the certificate   .   .   .   $3,100 00

Interest on $3,100 from February 2, 1903, at which time the $1,900 was paid by the Order to the claimants, to August 12, 1904, the date of the receiver's appointment, *i. e.,* interest for one year six months and ten days at 6 per cent   284 17

Total   .   .   .   .   .   .   . $3,384 17

On February 14, 1910, the matter of this claim again was brought before *Loring,* J., who reported it to the full court, with the facts already stated, as follows :

" It appears from the receiver's fourth report, filed January 29, 1909, and I find, that the then assets in his possession consist of the building and land numbered 200 Huntington Avenue, Boston, and of the assessed value of $90,500, and further assets, consisting of bonds and cash on deposit, amounting to approximately $60,000. Since said date certain payments have been ordered and the present undisposed-of funds amount to approximately $125,000, all of which funds are a part of the trust funds held by the order as emergency fund under the statutes, as decreed by this court on January 13, 1905. There are no other or general funds in the hands of the receiver.

" Certain death benefit claims which had accrued prior to the receivership, and amounting to about $225,000, have been

examined, reported upon, and under prior decrees in this cause paid by the receiver. Interest on these claims was allowed to the date of the receivership, August 12, 1904.

" The total amount of the claims reported upon in the receiver's said fourth report is approximately $75,000. As first presented to this court all of these claims were based upon judgments upon death benefit certificates obtained subsequent to the receivership, and these claims were all disallowed as judgments, under the said decree of October 7, 1907, and also disallowed, with two exceptions, as subsequently presented under an agreed statement of facts, by a decree entered in this cause on October 26, 1909, based upon a memorandum of decision of October 13, 1909. An appeal from said degree is now pending. The total amount of these disallowed claims is approximately $65,000 ; the amount involved under said appeal is approximately $55,000.

" I report these questions for the consideration of this court :

" 1. Whether the said Carter claimants were entitled to payment out of the emergency fund of the whole amount of the said Texas judgment, viz., $4,272.10, together with interest thereon from May 23, 1904, the date when said judgment was rendered.

" 2. Whether the said claimants are entitled to interest on the amount of said judgment, viz., $4,272.10, or on any part thereof, from the date when the judgment was rendered; and if the claimants are so entitled, whether interest is to be reckoned up to the date when the receiver was appointed, viz., August 12, 1904, or to any later date."

*H. A. Wyman,* receiver, *pro se.*

*S. C. Bennett,* for the claimants Carter.

*J. J. Higgins & A. L. Goodwin,* for the members in good standing.

LORING, J. 1. The first question presented by this report is whether the decree of October 7, 1907, was wrong in restricting the petitioners to $3,100 and interest thereon. The claimants' contention is that the judgment in their favor for $4,272.10, having been rendered before the date of the receivership, is binding on the corporation and on the receiver, and for that reason they are entitled to have the whole judgment (including $500 for an attorney's fee and $360 statutory penalty, with in-

terest on those items) paid out of the emergency fund. This judgment and the whole of it is entitled to full faith and credit. But the judgment is a judgment that a certain sum is due from the corporation. Whether that sum is payable out of a particular trust fund of the corporation, is a separate and further question. It was pointed out in *Palmer* v. *Northern Mutual Relief Association*, 175 Mass. 396, that if a creditor who has recovered a judgment against such a corporation as the defendant while it is a going concern wishes to have that judgment paid out of the emergency fund, he has to file a bill in equity to get that relief. In such a bill in equity the further and separate question spoken of above would be adjudicated. In the case at bar there has been no judgment on this separate and further question. The emergency fund is a trust fund limited to the payment of death benefits. R. L. c. 119, §§ 7, 8. So much of this judgment beyond the amount directed to be paid by the decree of October 7, 1907, is not for a death benefit and cannot be paid out of this fund.

If by-law 53 * were construed to authorize payment of the whole judgment out of the emergency fund, it would be void as a by-law in conflict with R. L. c. 119, §§ 7, 8.

Again, if the petitioners were right in their contention that the death benefit here claimed is irretrievably merged in the judgment, the result would be that none of it could be paid out of the emergency fund. For that fund can be applied in payment of death benefits only, and the judgment includes other matters. But as we have already held in *Attorney General* v.

---

* The by-law of the defendant referred to above was as follows:

" 53. Death benefits shall be paid from a fund created and sustained by periodical assessments from all members, to be known as the benefit fund. These assessments and fund shall not be used for any other purpose than the payment of death benefits or the establishment of the emergency fund in the manner provided by these laws; but it shall be lawful to pay out of said fund the amount of any judgment obtained against the Supreme Council upon a benefit certificate, and the expenses of any litigation under the direction of the general counsel. If at any time or in any case it becomes necessary to pay the money due on a benefit certificate into court, or the same is ordered paid into court by reason of any contest, there shall be deducted from the amount called for by such benefit certificate such reasonable sum for attorney fees and expenses as may be agreed upon or be fixed by the court into which such money is paid."

*American Legion of Honor,* 196 Mass. 151, so much of the judgment as represents the death benefit can be paid out of the emergency fund.

2. The second question presented by this report is whether interest, after the date of the receivership, is to be allowed on death benefit claims.

It is stated in the report that the emergency fund now in the hands of the receiver amounts to about $125,000, and that there are no other funds in his hands. It is also stated that the possible claims against this fund will not exceed $65,000. Apparently there will be a balance of some $60,000 or more in the emergency fund after paying all death benefit claims that matured before the date of the receivership. These petitioners contend that interest should be allowed on the death benefits due to the several dates on which the death benefits are respectively paid by the receiver.

The general rule is that no interest shall be allowed for delay after the date of insolvency. That was established by this court in *Williams* v. *American Bank,* 4 Met. 317. That case dealt with the insolvent estate of a deceased person, and the rule was laid down there (at p. 323) in these words: " But all the delay, which occurs after that time, is in fact a delay necessarily incident to the liquidation and settlement of the estate; and there is no reason in principle, why the loss occasioned thereby should be borne by a creditor whose claim did not happen to bear interest before the death of the debtor, and not by one whose debt was in terms bearing interest. They are entitled to share in a common fund, in proportion to the amounts due to them respectively, at the decease of the debtor; and they are delayed, in receiving their dues, by means for which one is no more responsible than the other, and which neither could remove by any diligence." The rule has been followed in *Thomas* v. *Western Car Co.* 149 U. S. 95; *Bowman* v. *Wilson,* 12 Fed. Rep. 864. See also *Solomons* v. *American Building & Loan Association,* 116 Fed. Rep. 676, where the intermediate cases are collected.

Where there is a surplus which otherwise would go to the next of kin, interest is allowed on debts due from a deceased person whose estate although declared insolvent has turned out to be

solvent. This is because the next of kin are volunteers, and the statute then in force (Rev. Sts. c. 64, §1) declared that it is the "residue" after payment of the debts of the deceased which is to be paid to the next of kin. *Williams* v. *American Bank*, 4 Met. 317.

A creditor's right to collect interest out of collateral held for the payment of principal and interest is not affected by the insolvency of the debtor. *Jourolmon* v. *Ewing*, 85 Fed. Rep. 103. *First National Bank* v. *Ewing*, 103 Fed. Rep. 168, 190. But if a secured creditor waives his right to collect interest out of his collateral and seeks to share in the general funds of the insolvent, the general rule applies and no interest after the date of the insolvency is allowed. *Solomons* v. *American Building & Loan Association*, 116 Fed. Rep. 676.

In the case at bar the contention is not between volunteers and creditors, nor is it between holders of liens and creditors. The contention here is between two classes of creditors entitled to a common fund where one class has priority over the other.

It is like the case of partnership and separate creditors in bankruptcy. It is settled there that a surplus in the separate estate left after separate creditors have received full payment of the amount proved by them (that is to say, of the debts due with interest to the date of the bankruptcy proceedings) is to be applied to payment of the amounts proved by partnership creditors. *Thomas* v. *Minot*, 10 Gray, 263. It is also settled that in case there is a surplus in the separate estate after the amounts proved by partnership as well as separate creditors have been paid in full, interest to the date of payment is to be made on debts due separate creditors. *Whittingstall* v. *Grover*, 35 W. R. 4.

In the case at bar the beneficiaries named in certificates which matured before August 12, 1904, (the date of the insolvency proceedings against the defendant corporation,) have priority in the distribution of the emergency fund. No order for the distribution of the surplus has yet been made. But if the rule laid down in *Fogg* v. *United Order of Golden Lion*, 159 Mass. 9, is followed, those who contributed to that fund will be entitled to the surplus of that fund after the death benefits which matured before August 12, 1904, have been paid, their share in

it being based on their contributions to it. The delay which has ensued in winding up the affairs of the order is no more to be attributed to these persons than it is to be attributed to the beneficiaries of the death benefits which have matured. It is a necessary incident of winding up the affairs of the order. It is true that the income earned by the emergency fund in the interim will enure to the benefit of the second class. But no one of the second class has yet received a cent, while payment of the amount due to them has been made to all of the first class (including the intervening claimants in this suit) whose claims could be adjusted.

No interest is to be allowed after August 12, 1904.

*Decree accordingly.*