HARRY E. WALTER,

*vs.*

PENINSULA CUT STONE COMPANY.

*New Castle, April* 12, 1912.

A mortgagee is entitled to be paid from the proceeds of sale of the mortgaged premises made by a receiver, not only the principal debt, but also interest thereon until the order of Court for the payment thereof to the mortgagee.

Where a receiver took control of mortgaged premises, consisting of a manufacturing plant, in the belief that its value was more than sufficient to satisfy the mortgages; and where, without operating or in any way improving the plant, he retained and sold it for less than the mortgages, his acts being primarily for the benefit of creditors other than the mortgagees; no part of administration expenses were chargeable against mortgagees.

Where the proceeds of a receivership sale of property incumbered by two mortgages are insufficient to pay both in full, the first mortgage, with interest, is to be paid in full, and the balance is to be applied on the second mortgage.

EXCEPTIONS AS TO ALLOWANCE OF INTEREST ON TWO MORTGAGES. A receiver for the defendant company having heretofore been appointed, in due course of administration of its affairs, claims against said company were filed, among them being claims for city and county taxes. The holders of two mortgage liens against the same real estate also filed claims for the principal thereof and interest to the date of payment and exceptions were filed by the receiver to the interest claims. After the filing of these claims the receiver was ordered to sell the real estate free and clear of all liens created by or recovered against the defendant company, and the liens were transferred to the funds to be derived from such sale. Upon the return of said sale of the real estate by the receiver it appeared that the proceeds thereof were not sufficient to fully satisfy both of the liens and interest, and an order was made requiring the persons interested therein to appear before the Chancellor for the purpose of determining the validity, amount and priority of said claims.

*Saulsbury, Ponder & Morris*, for receiver.

*John P. Nields, Christopher L. Ward and Horace G. Eastburn*, for holders of first mortgage.

*Reuben Satterthwaite, Jr.*, for second mortgagee.

THE CHANCELLOR: The affairs of the Peninsula Cut Stone Company have been fully administered by a Receiver appointed by this Court on the ground of insolvency. From the report of the receiver it appears that the assets have all been converted and about $3,000 obtained from the personal property and assets other than real estate, and $20,500 from a sale of the real estate. By order of the Court the real estate was sold clear of liens created by or recovered against the insolvent company and the liens were transferred to the fund. Upon the real estate there were two mortgages made by the Peninsula Cut Stone Company, the first for $12,500, on which a balance

of principal of $12,105 is due, with interest from February 5th, 1911, and the second for $7,000 with interest. There are no other debts of the insolvent corporation which were liens on the property of the company. There are city and county taxes on the real estate which have priority. The proceeds of sale of the real estate, after paying the taxes, are not sufficient to pay the two mortgage liens; and the other assets in the hands of the receiver are sufficient to pay the costs of the sale of the real estate and the costs of the general administration of the receivership, including the compensation of the receiver and his counsel. By the appraisement, the real estate was valued at $30,000, so that it was supposed that there was a value in it to the estate of the insolvent over the liens against it. The real estate consisted of a manufacturing plant, which was not operated by the receiver, or used in any way for the benefit either of the lien holders or general creditors.

Several questions were raised and discussed: (1) As between the mortgagees on one side and the general creditors on the other, are the former entitled to interest to the date of the appointment of a receiver, or until the proceeds of sale have been received by the receiver, or until these debts are paid through the receiver? (2) Should the mortgagees, who are to be paid in full, pay some portion of the costs and expenses, either of the sale of the real estate, or of the general administration of the estate, or of both, and, if so, what proportion? (3) As between the two lien holders, the first and second mortgagees, as the fund from the sale of the security for both is inadequate to pay both, in full, is the holder of the first lien entitled to payment in full?

*First Question.* This question has not, so far as reported decisions show, been decided in this State. In administering the estates of insolvent decedents interest is paid by the executor or administrator on liens to the time of satisfaction. In allowing payment of liens on land sold in partition proceedings in Chancery, interest is allowed to the date of the decree of distribution.

In the case of *Blair v. Clayton Enterprise Co., ante p.* 95, 77 *Atl.* 740, this Court in administering the estate of an insol-

vent corporation by a receiver, where the claims were all of one grade and there were no liens or other priorities, and the estate was insufficient to pay all claims and interest in full, allowed interest only down to the date of the appointment of the receiver; but it was expressly stated in the opinion given by the Chancellor in that case that it did not necessarily or probably apply to liens, or to cases where the assets were sufficient to pay all claims and interest in full to the time of distribution. In the federal courts and in Massachusetts and Texas it is settled that the lienor is entitled to interest on the debt due him, at the rate in the instrument creating it, to a point beyond the appointment of a receiver. 34 *Cyc.* 372; *Trust Co. v. Condon,* 67 *Fed.* 84; *Jourolmon v. Ewing,* 85 *Fed.* 103; *Grand Trunk, etc., Co., v. Central, etc., Co.,* 91 *Fed.* 569; *First, etc., Bank v. Ewing,* 103 *Fed.* 168, 191; *Solomons v. Building, etc., Ass'n.,* 116 *Fed.* 676; *Coder v. Arts,* 152 *Fed.* 943, affirmed without comment in 213 *U. S.* 223. *In re Stevens,* 173 *Fed.* 842; *Atty. General v. American Legion of Honor,* 206 *Mass.* 131, 138, 92 *N. E.* 134; *First, etc., Bank v. Campbell, etc., Co.,* 52 *Tex. Civ. App.* 445, 114 *S. W.* 887. Some of the cases in the federal courts related to administration of estates of bankrupts, but the statute did not affect the determination of the question. There the decisions are based on the contract right to interest as part of the debt. This seems the right basis for a right rule, and is an exception to the general rule that equality is equity. In Massachusetts, in the case cited, the Court said:

"A creditor's right to collect interest out of collateral held for payment of principal and interest is not affected by the insolvency of the debtor."

The Court in the Texas case cited said that where property on which there is a lien is placed in the hands of a receiver, creditors other than the lien holder, have no interest therein until the secured debt is satisfied to the extent that it is a lien on the property. In the case of *In re Stevens,* cited above, interest was allowed only to the time when the money is realized from the sale of the mortgaged premises, the Court saying:

"That is the end of the proceeding, we might say, for foreclosing the lien, and the duty then devolves upon the trustee to pay the claimant

his debt. The estate ought not to be burdened with the payment of interest subsequent to that time."

But the other cases in the federal courts and the Court in Texas allow interest to the time of payment, or to the making of the decree for distribution. The case of *Thomas v. Car Co.*, 149 *U. S.* 95, 116, is not opposed, though there the Court said:

"As a general rule, after property of an insolvent passes into the hands of a receiver or of an assignee in insolvency, interest is not allowed on claims against the funds. The delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate."

This has been held not to refer to the payment of liens from the proceeds of sale of the pledged property, but to general unsecured claims. So also the case of *Solomons v. American B. & L. Ass'n.*, 116 *Fed.* 676, is not opposed, for the lien creditor was not claiming payment from the proceeds of the security held by him, and the Court expressly recognizes the right of the lien creditor to have interest until satisfaction. In New York, the Court in *People v. American, etc., Co.*, 172 *N. Y.* 371, 377, 379, 65 *N. E.* 200, has taken a position opposed to that of the federal courts, for that case cannot be said to be based on the statute. It was there held thus:

"While interest is allowed as against the corporation itself, or its stockholders, if the assets are sufficient for the purpose, as between preferred and unpreferred creditors, no interest is allowed after the law takes charge through the appointment of a receiver."

The New York statute gave to debts due from insolvent building and loan associations to trustees, etc., a preference, and it was not strictly the case of a lienor's claim, where interest was contracted to be paid by the instrument creating the lien. But the language of the Court is broad enough to cover such a case. The theory is that the estate is being adminsitered by the receiver as an arm of the Court, and the delay is that incident thereto, and not that of the corporation, and therefore it should operate neither to benefit or injure any creditor.

"Distribution should be made as of the date when the delay began, for it was not only caused by the law but was necessary for the protection of all classes of creditors. As between the creditors themselves, therefore, interest ceases to accrue on their respective claims, whether preferred or

unpreferred, from the day when the corporation let go and the court took hold."

This is supported apparently by citations from cases in New York only. The date of the order for payment is the time to which interest on secured claims should be calculated, rather than to the time the proceeds of the pledged property were received by the receiver. Following the precedents, the reasons therefor being satisfactory, it is here decided that the holders of both of the mortgages are entitled to interest on their mortgages until the order for payment, as against other creditors, if the proceeds of sale of the mortgaged premises applicable to the payment thereof is sufficient.

*Second Question.* In the case of *Central Trust, etc., Co., v. Chester County Electric Co., ante, p.* 123, 80 *Atl.* 801, a mortgage given by a public service corporation to secure bonds was foreclosed in this Court after the property had been for more than a year in the hands of a receiver appointed by this Court in another cause on the ground of insolvency. There the proceeds of sale were inadequate to pay the bonds, and there was, in fact, no assets in the hands of the receiver for payment of his compensation as receiver. An allowance as part of the expenses of the cause was made to the receiver to compensate him for the services rendered in conserving the property, which, in fact, he improved. There the authorities were fully considered. The case now before the Court is different. Here the appraisement showed probable value to the estate over the mortgages. and the receiver retained control and made the sale primarily for the benefit of the creditors other than the mortgagees. He did not operate the plant, or do anything to improve it, or render any service of special benefit to the mortgagees, or the mortgaged premises. A different question might be raised if the mortgaged premises were concededly inadequate security for the payment of the liens, so that the general creditors would receive no benefit therefrom as an asset. In such a case if the lien creditors use the receivership to collect their debts, they might be required to pay for the services by having the allowances to the receiver and his counsel paid in part, at least, from the proceeds of sale of the mortgaged premises. This was the

principle adopted in *Lembeck v. Jarvis*, 68 *N. J. Eq.* 352, 59 *Atl.* 565. But in this connection it should be noted that the lien creditors have rights as general creditors against the general assets in case they have either exhausted the security and have not been paid in full, or have waived the benefit thereof. It may be more just to lien holders and all creditors that the receiver, rather than the pledgee, should convert the pledged property. But in the case under consideration the mortgage lien creditors are clearly not properly or fairly chargeable with any part of the administration expenses.

*Third Question.* As the proceeds of the sale of the mortgaged premises are not sufficient to pay both mortgages in full, principal and interest to the date of the order of payment, the debt secured by the first mortgage is to be paid in full, including interest, and the balance applied to the debt and interest of the second mortgage. This is clearly the right of the prior lien holder, and no serious contention is made to the contrary.

Let an order be entered accordingly.