DANIEL A. HEGARTY,

*vs.*

AMERICAN COMMONWEALTHS POWER CORPORATION, a corporation created by and existing under the laws of the State of Delaware.

*New Castle, July 6, 1932.*

*Clarence A. Southerland,* of the firm of Ward & Gray, for receivers.

. *Christopher L. Ward, Jr.,* of the firm of Marvel, Morford, Ward & Logan, for objector.

THE CHANCELLOR: American Gas & Power Company claims that on March 31, 1931, prior to the appointment of receivers for the defendant in this cause, it entered into a settlement with the defendant of mutual obligations existing between them, whereby the defendant acquired *inter alia* certain bonds from it, which the defendant thereafter hypothecated together with other collateral which it had acquired from other sources to secure a loan of $2,963,-598.79 made to it by United States & International Security Corporation. The receivers, very shortly after their appointment, were notified by the payee of the note that on January 18, 1932, it proposed to offer the collateral for sale, or so much thereof as was necessary in order to liquidate the note. The receivers were of the opinion that if the sale were made all equity in the entire collateral would be lost to them, not only the equity in the bonds which the defendant had acquired on its settlement with the present objector but as well the large amount of collateral derived by it from other sources. In order to avert this result the receivers negotiated a plan to save the equity of the defendant in the collateral from the total sacrifice which seemed to be threatened and secured an order of the Chancellor approving the plan. The details of that plan need not here be stated. It is sufficient to say that one of its features was the sale of the bonds above referred to as having been obtained in the settlement with the objector, for something like $537,965. This sum, together with about $750,-000 in cash, paid off the note and the receivers came into possession of all the collateral except the bonds just referred to and fifty thousand shares of the preference stock of

American Gas & Power Company which had composed a part of the collateral.

The collateral contained *inter alia* $105,000 principal amount of Vermont Lighting Corporation five per cent. first mortgage bonds. These bonds had been acquired by the defendant in 1929 in a transaction which was in no wise related to the settlement transaction between the defendant and the objector above referred to.

If the allowances prayed for are granted, some of these Vermont Lighting bonds will have to be sold in order to raise the necessary money to pay them. This fact is what has precipitated the objector's opposition to the pending application.

The objection is based on the contention that American Gas & Power Company, the objector, has an equitable lien on the Vermont Lighting bonds, notwithstanding they were never acquired by the defendant from it. The ground on which this contention is based is that in the settlement above referred to, the defendant, whose officers then dominated the American Gas & Power Company, fraudulently caused the latter to take over a block of twenty-four thousand shares of stock at $100 per share which was worth not more than $65 per share, thus causing damage to the objector of $35 per share, or a total of $840,000.00; that the objector is entitled to impress an equitable lien in this amount upon the assets obtained from it as a result of the alleged fraud; that the bonds obtained from it and sold as aforesaid yielded proceeds which went in part to pay off the note above mentioned; and that as the proceeds of the objector's former property so fraudulently obtained from it contributed to payment of the note whereby the Vermont Lighting bonds were released along with the other collateral, the Vermont Lighting bonds as well as the other collateral now held by the receivers must be held to be impressed with the same lien that attached to the sold bonds which yielded the proceeds.

Thus the objector is seeking to establish a lien on prop-

erty on the theory that a case is shown which comes under the equitable doctrine that where property is impressed with a trust and sold, the party in whose favor the trust exists is entitled to follow its proceeds into whatever other property they can be traced.

Now whether the facts present a case to which that doctrine is applicable is not now before me for decision. By agreement between the solicitors, that question has been postponed for later consideration.

The immediate question is one that arises on the assumption, made for the present purpose only, that the objector is entitled to regard the Vermont Lighting bonds as subject to an equitable lien in its favor existing before the receivers were appointed.

The immediate question is—may compensation to the receivers be allowed if the payment thereof is at the expense of an equitable lienor? In this State the only cases in which a rivalry has arisen in receivership causes between costs and allowances on the one hand and the rights of a lienor on the other, have been cases where the lien was a legal one. *Central Trust & Savings Co. v. Chester County Electric Co.,* 9 *Del. Ch.* 247, 80 *A.* 801; *Walter v. Peninsula Cut Stone Co.,* 9 *Del. Ch.* 374, 82 *A.* 961; *Ferris v. Chic-Mint Gum Co.,* 14 *Del. Ch.* 232, 124 *A.* 577; *Frazer v. Consolidated Novelty Co., Inc.,* 16 *Del. Ch.* 248, 157 *A.* 431. It fairly appears from these cases that if the lienor avails himself of the receivership, or if the activities of the receiver have been of benefit and advantage to him, it is but right and fair that he should be required to pay his just burden of the costs, including allowances to the receiver. This rule is not limited to the class of receiverships that involve public utility operating companies. It is founded on the proposition that where a benefit has been sought or conferred, it should be paid for.

In the instant case I have no doubt upon this point, that the activities of the receivers in adjusting the note matter in January, 1932, were of great benefit to the sup-

posed lienor. Indeed, if it had not been for the success of the receivers in that adjustment, I am of the opinion that not only the Vermont Lighting bonds but as well all the rest of the collateral would have been foreclosed and all equity therein lost to the estate. The receivers did a very commendable piece of work in connection with that matter and they did it under circumstances that demanded unremitting attention, perseverance and the exercise of a rather unusual degree of resourcefulness. Conceding that the objector will eventually succeed in establishing its right to impress a lien on all of the collateral taken down by the defendant when the note was paid off, I am of the opinion that it cannot justly complain if its lien is made to bear a fair proportion of the value of the services rendered by the receivers in salvaging the property upon which the lien, if it exists, is alone attachable.

The difficulty at the present stage is to say with assurance what the value of that service is. The receivers are asking $46,000.00 for themselves and their counsel on account of all services rendered and to be rendered in the receivership. To allow this sum to be raised out of the Vermont Lighting bonds would mean that all of them now in the estate would have to be sold. I am unwilling to authorize a sale to that extent at this time. I understand that it is the desire of the receivers that some compensation be received at this time for one of the receivers in particular, because he is devoting his entire time exclusively to the receivership matters. He has been doing so for close on to six months without receiving compensation. I understand his services, or services from one who is equally well qualified as he is in his field, are indispensable to this receivership—one that embraces a public utility system. He cannot be expected to exhaust his own ready means to support himself during the entire period of his services. It is asked that he be allowed $10,000. No objection is raised to the effect that that is too much. If it should be too large an amount to allocate as properly chargeable ahead of the

equitable lien of the objector (assuming such a lien to exist), then of course the sale of a part of the Vermont Lighting bonds in order to raise money to pay it would be inadvisable. I am, however, disposed to order and will so order that the receivers may sell enough of the bonds to raise that amount and to pay the same to Mr. Nichols on account of his compensation. This I think is within the limits of reasonable safety.

I regret that the other two receivers and the counsel must await a later date for their compensation. In view of the pending controversy over the question of the objector's alleged equitable lien, it seems to me that no further disturbance of the *status quo* with respect to the property involved in that controversy ought to be permitted.

Order accordingly.