The Prudence Company, Inc. and The Prudence Bonds Corporation, Appellants, v. Illinois Women's Athletic Club et al. v. Maurice H. Berkson, Appellee.

Gen. No. 38,316.

Opinion filed March 2, 1936. Rehearing denied March 16, 1936.

VERNON R. LOUCKS and A. J. HENNINGS, both of Chicago, for appellants.

DENEEN, HEALY & LEE and SAMUEL BERKE, all of Chicago, for appellee Maurice H. Berkson; CHARLES S. DENEEN, DONALD N. SCHAFFER and MAYER GOLDBERG, all of Chicago, of counsel.

MARK D. YELLON and KELLY & COHLER, all of Chicago, for appellee I & I Holding Corp.; MARK D. YELLON, JAMES J. KELLY and J. ROBERT COHLER, all of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal complainants seek to reverse two orders entered by the superior court of Cook county by which the report and account of the receiver and his supplemental report and account were approved

and confirmed. Judgment was also entered against complainants in favor of the receiver for the benefit of himself and his solicitor and certain creditors of the defendant Illinois Women's Athletic Club in the sum of $55,300.86, being the amount of the deficit which accrued during the receivership. This amount was also taxed against the property involved in the foreclosure suit.

The record discloses that on March 15, 1932, the Prudence Company, Inc., filed its bill against the Illinois Women's Athletic Club, a corporation, for the foreclosure of a trust deed for a part of the indebtedness secured by the trust deed. The trust deed secured an indebtedness of $1,600,000, and another note for $150,000. There was a decree of foreclosure as prayed for and on January 10, 1933, after the property was sold by the master, a deficiency decree was entered for $224,203.76.

The record further shows that on February 24, 1932, the International & Industrial Securities Corporation recovered a judgment against the defendant Illinois Women's Athletic Club in the circuit court of Cook county for $139,153.90, and execution was issued and returned wholly unsatisfied. March 11, 1932, the International & Industrial Securities Corporation commenced an action in equity in the United States District Court for the Northern District of Illinois, Eastern Division, against the Illinois Women's Athletic Club for the marshaling of liens and the appointment of a receiver for the Illinois Women's Athletic Club.

Pursuant to such application two receivers were appointed by the United States court. Four days afterward complainant in the instant case, by leave of the United States court, filed its bill to foreclose. The receivers appointed by the United States court qualified, and on March 22, 1932, by an order of the superior court they were also appointed receivers of the prop-

erty in question, and operated the premises, which consists of a large building 17 stories in height, nine of which were used for commercial purposes and the balance by the Illinois Women's Athletic Club for club purposes. The receivers operated the property in the United States court procedure until November 22, 1932, when that proceeding was dismissed and thereafter, as receivers of the superior court, operated the property until May 26, 1933, a little over 14 months, and on that date they were permitted to resign, their final report and account having been approved. In this report the receivers stated that the operation of the property by them was resulting in a deficit of about $1,000 a month.

April 15, 1933, complainants filed a verified petition in which they set up the entry of the deficiency decree for $224,203.76; that the court had theretofore entered an order fixing the rental which was to be paid by defendant Illinois Women's Athletic Club for the use of certain floors of the premises at $2,500 a month; that the receivers had been unable to collect sufficient money to pay the operating expenses, that the rental fixed for the Athletic Club was not a reasonable rental and should be increased; that the receivers were unable to collect the $2,500 a month and the prayer was for a writ of assistance to compel the vacation of the premises by the Illinois Women's Athletic Club; that if a reasonable rental were obtained for the premises occupied by the Athletic Club, the revenue from the building would be more than sufficient to pay up the deficit incurred by the receivers and the operation of the building would show a profit of more than $3,750 a month. Five days later, April 20, 1933, complainants filed another petition in which they set up the resignation of the two former receivers and that a successor receiver should be appointed to take charge of the premises on account of the deficiency decree. After-

ward, on May 20th, a writ of assistance was issued; the Athletic Club apparently evicted, and on May 26, 1933, an order was entered which recited the entry of the deficiency decree, the discharge of the prior receivers, and that it was necessary to collect the rents to pay the deficiency and to preserve the property. It was then ordered that Maurice H. Berkson be appointed successor receiver, and that "the complainants give bond in the penal sum of one thousand dollars to the adverse parties, conditioned to pay all damages, including reasonable attorneys' fees sustained by the appointment of such successor receiver in case the appointment of such successor receiver is revoked or set aside." It was further ordered that Berkson give bond in the sum of $20,000 for the faithful performance of his duties. Berkson qualified and acted as receiver from the date of his appointment to February 1, 1935, or a period of about 20 months, almost 10 months after the period of redemption had expired and after a master's deed had been issued. The period of redemption expired about April 10, 1934, and the master's deed was issued April 16, 1934, to James R. Scott.

December 14, 1933, Berkson filed his petition to which was attached his account showing receipts and disbursements covering the first six months of his operation. The receipts totaled $44,914.66 and the disbursements $42,646.05, leaving a balance of $2,268.61, made up of $1,831.75 on deposit with the City National Bank & Trust Co., $55 in cash, and tax warrants in the sum of $381.86. The petition further set up that neither the receiver nor his solicitor had received any compensation and that a fair, reasonable fee for the receiver would be $3,000 and $2,250 for the solicitor. The prayer was that these amounts be allowed and the report approved. On the same day an order was entered in accordance with the prayer of the petition.

May 15, 1934, the receiver filed a petition wherein he set up that a substantial portion of the building was occupied and that he was obliged to furnish water to several tenants; that the water pump was in bad condition and needed repairing, and that there was a deficit in the operation of the property; that a master's deed had been issued and the grantee therein had theretofore filed a petition asking that an order be entered directing the receiver to deliver up possession of the property, and the prayer was for instructions of the court.

May 25, 1934, which was a little more than a month after the period of redemption had expired, and about 10 days after the master's deed had issued, the successor receiver filed his "final account and report." On the same day the complainant filed objections to the report. Afterward the motion of complainants that the receiver be ordered to turn over the property to the holder of the master's deed, and the hearing on the successor receiver's report, to which objections had been filed, were both apparently continued from time to time by the court on the ground that they could not be heard by the court because of other pressing business. The receiver continued to operate the property and on January 22, 1935, filed his supplemental report and account which set up in considerable detail the receipts and disbursements.

On the same date an order was entered giving three days within which to file objections and on January 25th complainants filed objections. The next day an order was entered overruling complainants' objections and approving the receiver's second report and account covering the period from December 1, 1933, to May 15, 1934. By this order the successor receiver's compensation for his services was fixed at $4,850 and his solicitor's at $4,850. The order also found that neither of these amounts had been paid, that there was a

deficit of $51,654.98, and it was ordered and decreed that the Prudence Company, Inc., and Prudence Bonds Corporation were each jointly and severally liable and they were ordered to pay the successor receiver the $51,654.98 within 30 days, and that in default thereof an execution issue. And it was further adjudged and decreed that the successor receiver be given a valid first lien on the premises as further security, and that he and his solicitor be given a lien prior to the other creditors of the successor receiver. Complainants excepted to this order.

April 24, 1935, the receiver filed a further petition and his supplemental report covering the period from January 1, 1935, to February 20, 1935. This showed a further deficit, the total amount of which then was $55,300.86.

On the same day complainants filed objections to this supplemental report, but they were overruled on the same day and an order entered fixing the total deficit at the amount last above stated and ordering that it be paid as provided by the prior order of January 26, 1935.

Complainants contend that the court erred in overruling, without a hearing, their objections to the receiver's two reports and accounts above mentioned; that the objections called for strict proof as to the receipts and disbursements, and that the court was wholly unwarranted in overruling the objections and approving the reports and accounts without a hearing on the merits. We think it obvious that this contention must be sustained.

Complainants' contention seems to be conceded by counsel for the receiver, but they say that complainants are precluded from questioning the orders since they failed to preserve any record of what transpired at the times when the two orders were issued, and that since the "orders did not show *affirmatively* that the

court heard no evidence, but rather did not expressly state that evidence was heard," therefore the orders are sufficient under subsection 3 of section 64, ch. 110, Ill. State Bar Stats. 1935, which provides: "No special findings of fact or certificate of evidence shall be necessary in any case in equity to support the decree." And they also cite the case of *First Nat. Bank v. 10 W. Elm St. Bldg. Corp.*, 277 Ill. App. 337, to the effect that the burden of preserving the evidence is upon the person attacking an order or decree. We hold the contention of the defendants cannot be sustained because the record before us shows that no evidence was heard. The order of January 26, 1935, recites the motion of the receiver for the approval of his second report and that "the court having read and examined the accounts and reports of the receiver, as aforesaid, and the objections thereto, by the Complainant, . . . and having heard arguments of counsel" finds, etc. And the order of April 24, 1935, is substantially the same. The statute relied upon by counsel for the receiver above quoted, and the rule announced in 277 Ill. App., apply only where the record shows evidence was heard but not preserved. No evidence having been heard, the court was wholly unwarranted in disposing of the objections to the reports without a hearing.

Complainants further contend that they are not personally liable for any deficit occasioned by the receiver. In reply to this, counsel for the receiver say that while ordinarily a complainant in a foreclosure suit is not liable for any deficit incurred by the receiver, yet the facts and circumstances in the instant case take it out of the ordinary rule; that in the instant case complainants procured the appointment of the successor receiver with "full knowledge of the operating loss incurred by the predecessor receivers," and that this justifies the court in entering judgment against the complainants for the deficit. On the other hand, counsel for

complainants say that although a deficit accrued during the operation of the building under the prior receivers, this was brought about in a great part by the fact that the defendant Illinois Women's Athletic Club was occupying several floors of the building and was not required to pay an adequate rental therefor; that complainants had petitioned for and secured a writ of assistance ousting the Athletic Club from the premises and it was thought that the space could be re-rented for a considerable increase which would be more than sufficient to pay the back deficit; that there was a deficiency decree of more than $224,000 and therefore complainants were entitled to a receiver.

They further contend that the first report made by the successor receiver covering a period of six months of his operation of the building, tended to indicate that there was more than $2,200 profit during that period, excluding the payment of fees, etc., that it was only in one of the subsequent reports filed by the receiver that complainants first learned that the property was being operated at a great loss, and that as soon as they were advised of this situation they moved to have the receiver discharged.

In *Atlantic Trust Co. v. Chapman*, 208 U. S. 360, it was held that while cases may arise in which it may be equitable to charge a complainant, at whose instance a receiver is appointed, with the expenses of the receivership, yet to warrant this there must be special circumstances; that the general rule in such cases is that the expenses are charged upon the property or fund without personal liability on the part of the complainant, and that mere inadequacy of the fund to meet such expenses does not warrant holding the complainant, who has not been guilty of any irregularity, liable.

In *Miller v. American Light & Fixture Co.*, 181 Ill. App. 623, the court said (p. 628): "The proposition set forth in appellant's brief and argued is this: 'The

mere fact that the property in the hands of the receiver is insufficient to meet the expenses of the receivership, does not of itself render the plaintiff, at whose instance the receiver was appointed, liable for those expenses.'

"The truth of that proposition is not questioned here, and must be regarded as sound and well supported by the case of *Atlantic Trust Co. v. Chapman*, 208 U. S. 360. The main doctrine of that case is that as soon as a receiver is qualified he comes under the sole direction of the court, is the court's officer, and his engagements are those of the court, and are performed under the order and directions of the court, and the liabilities he incurs are chargeable upon the property and not against the parties at whose instance he was appointed, and who have no authority or control over him and his actions."

In the instant case a successor receiver was appointed on motion of the complainants. He was represented by his own solicitor; he was operating under the "sole direction of the court"; he was the "court's officer" and "his engagements are those of the court" and were "performed under the order and directions of the court." It was his duty to keep the court and complainants advised that the property was being operated at a loss. And counsel for complainants contend that the receiver failed to perform his duty in this respect, but on the contrary made misleading reports; the record indicates that this was so.

Other authorities sustaining the rule announced by the U. S. Supreme Court in the *Chapman* case are: *McLean v. Gillespie*, 130 Ill. App. 356; *Farmers' Loan Co. v. Oregon Pac. R. Co.*, 31 Ore. 237; *Meili v. Crane*, 102 Cal. App. 144, 282 Pac. 960; *Burnrite Coal Co. v. Riggs*, 274 U. S. 208, and many others. Complaint is also made that the court erred in allowing the receiver and his solicitor large fees and that they should be al-

lowed nothing, having operated the property as disclosed by the record.

We do not pass on the question whether a judgment should be entered against the complainants in this case for part or all of the deficit; nor do we pass on the question whether the fees awarded the receiver and his solicitor, or any part of them, should have been allowed, for the reason that there was no hearing on these questions. Moreover, the record discloses that the foreclosure in the instant case was for but a part of the indebtedness on the property in question and that there was subsequently another foreclosure suit for the remaining indebtedness, which apparently was $1,600,000 and which was secured by the same trust deed and in which proceeding a third receiver was appointed. This second foreclosure and receivership may have some bearing on the question whether complainants were liable to pay the deficit involved here, or any part of it.

The I & I Holding Corporation has filed a brief in this court and says that it is not primarily concerned in the controversy between complainants and the successor receiver, but says that in so far as the orders appealed from "fix complainants' liability to and the lien of this appellee, are (a) that the complainants are personally liable for the amount due to this appellee for the reasons that the orders of July 14, 1933, and December 30, 1933, taxed such costs against complainants and became final and binding, and the subsequent orders of January 26, 1935, and April 24, 1935 [being the two orders appealed from by complainants] merely ratified and affirmed complainants' liability, and that independently of said construction of said orders, the court, by virtue of said orders, properly taxed said costs against complainants under" sec. 18, ch. 33, Revised Statutes, "that this appellee is also entitled as a cumulative remedy to a first and prior lien against the

property herein foreclosed.'' The difficulty with this contention is that the orders of July 14th and December 20, 1933, did not tax the amount claimed by the I & I Holding Corporation against the complainants but taxed it ''as part of the costs of this proceeding.'' Furthermore, we are of opinion that the claim of the I & I Holding Corporation cannot be intelligently disposed of without a hearing, as above suggested.

For the reasons stated the orders of the superior court of Cook county appealed from are reversed and the matter remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

McSURELY, P. J., specially concurring: For the reason that the trial court did not properly try the objections to the receiver's reports, I concur in the above conclusion.

MATCHETT, J., specially concurring: I concur in the judgment that these orders should be reversed but do not agree with what is said in the opinion as to the possible liability of complainants who procure the appointment of a receiver under circumstances here appearing. I think the rule announced in *German Nat. Bank v. Best,* 32 Colo. 192, 75 Pac. 398, applicable.