**FIRST NATIONAL BANK OF FAIRBANKS,**
Alaska, a national banking associa-
tion, Appellant,

v.

Margaret M. DUAL, Louise Allred, Arthur
Anderson, O. M. Cass, et al., Appellees.

No. 350.

Supreme Court of Alaska.

May 28, 1964.

Mary Alice Miller, of Collins & Clasby, Fairbanks, for appellant.

Charles E. Cole, Fairbanks, for appellee O. M. Cass.

Robert A. Parrish by Karl L. Walter, Jr., Fairbanks, for appellees Louise Allred and Arthur Anderson.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

This case concerns itself principally with the duties and responsibilities of a court-appointed receiver of property involved in a mortgage foreclosure proceeding and of the responsibility, if any, for the payment of the receivership expenses by the party requesting the appointment of the receiver.

It is provided by statute in this jurisdiction that a receiver may be appointed by the court "provisionally, before judgment, on the application of either party, when his right to the property which is the subject of the action or proceeding and which is in the possession of an adverse party is probable, and where it is shown that the property or its rents or profits are in danger of being lost or materially injured or impaired".[1]

1. AS 09.40.240 [formerly § 55-6-91 ACLA 1949].

The receiver is required to take an oath and file an undertaking "that he will faithfully discharge the duties of receiver and obey the orders of the court."[2]

On May 10, 1955, the appellant, the First National Bank of Fairbanks, commenced an action in the District Court for the District of Alaska[3] to foreclose its real and chattel mortgage on certain property designated as the Black Rapids Lodge, situate on the Richardson Highway about 138 miles south of Fairbanks. Simultaneously the bank moved for the appointment of one Mort Cass as receiver to take possession of and operate the lodge until the entry of a final decree in the action.[4] The court granted the bank's motion and appointed Cass the receiver, not without strenuous objection, however, by Black Rapids Hunting Lodge, Inc., successor to Margaret M. Dual, who had mortgaged the lodge to the bank.

Sometime in the latter part of May, 1956, Cass assumed the duties of his office and proceeded to ready the lodge for operation, having borrowed under court authority $3,000 in order to commence business. Cass kept the business at the lodge in operation, with hired help and on personal credit for a period extending from June through December of 1956. In October of 1956 the court ordered him to give an account of his receivership. He complied with the order but the appellant bank objected to the accounting because of paucity of detail. The court rejected the account and on February 8, 1957, entered a second order to account, which was not complied with by the receiver until December 17, 1959.

In the meantime, in April of 1957, trial was had upon the bank's complaint and prayer for foreclosure. This was followed by a judgment foreclosing the bank's mortgage, establishing the priorities of the several lien claimants, and ordering the United States Marshal to sell the property to satisfy the liens. The bank became the purchaser at the sale on its bid of $6,500, which sum was deposited in the registry of the court. No issue was raised at the trial regarding the failure of the receiver to comply with the second order for an accounting. Not until a creditor of the receiver Cass moved in October, 1959, that the court require the accounting ordered in 1957, did Cass respond by filing with the court on December 17, 1959, a report and account made up for him by his counsel, who relied in part upon the first account prepared by a firm of certified public accountants.

Approximately two and one-half years later, that is, on June 4, 1962, a hearing was had on the report. During this two and one-half year interim period no objections to the report were filed by the appellant bank. In fact the bank did not object until after the first day's hearings had been completed, and made no specific objections to the report at any time, even though the trial court adjourned the hearing and directed the bank to serve and file detailed objections. In addition, the bank did not choose to examine the subsidiary financial records of the receiver which were available in court.

At the conclusion of the hearing, the trial court in the main approved the receiver's report of December 17, 1959. However, it disallowed the receiver any compensation for his services, and provided that the bank should bear substantially all of the expenses of the receivership above and beyond the proceeds of the marshal's sale.

On this appeal the bank contends that the trial court erred (1) in approving the re-

2. AS 09.40.250 [formerly § 55-6-92 ACLA 1949].

3. The functions of the District Court for the District of Alaska, as concerns this case, were transferred on February 20, 1960 (after the advent of statehood for Alaska) to the Superior Court for the State of Alaska.

4. In its motion for the appointment of a receiver, the bank represented to the court that Mort Cass was then a partner in a firm which had one of the largest lien claims against the lodge, and that he was "a man competent in business, well acquainted in the community, of good repute, and familiar with the property, the subject of this action."

ceiver's report,[5] (2) in failing to find the receiver negligent or guilty of bad faith and thus personally liable for the receivership debts, and (3) in ruling that the bank should bear the receivership losses as it sought and induced the appointment of a receiver and of this particular receiver.

■ The bank's first two contentions are without merit. This court's scope of review concerning the first two points is governed by certain provisions of Civil Rule 52(a) set forth in the margin.[6] Although this court may have viewed the facts differently had it been the initial trier thereof, that circumstance does not alone entitle it to reverse the trial court's finding.[7] From our examination of the record we cannot say that "[s]uch evidentiary weight and such convictional certainty" is present in this case that we do "not feel able to escape the view that the trial court has failed to make a sound survey of or to accord the proper effect to all of the cogent facts".[8] In short, we find no clear error in the trial court's findings and substantial acceptance of the receiver's report.

■ Appellant's third contention must also fail. Although the general rule is that a receiver's compensation and expenses are payable from the funds in his hands, and are not taxable against the party at whose instance the receiver was appointed, an exception arises when there is no fund out of which the expenses can be paid and such circumstances exist that it would be inequitable not to hold the party responsible who invoked the processes of the court to have the receiver appointed.[9]

■ We find special facts and circumstances did exist in the case at bar which justified the trial judge in holding the bank liable for that portion of the expenses of the receivership which could not be satisfied out of the receivership funds. As to the bank, the receivership was a friendly one. The receiver was appointed upon the bank's own motion and over objection, and it was the bank who recommended this particular receiver. The bank knew that the lodge was an insolvent business [10] but wanted the business continued in the hopes that the lodge would be a going concern at the time of the marshal's sale so it, as mortgagee, would

---

5. The bank in connection with its contention that the trial court erred in approving the receiver's account, sets forth some thirteen factual circumstances which, it claims, militate against the trial court's action.

6. Civ.R. 52(a) provides in part as follows: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

7. Isaacs v. Hickey, Opinion No. 210, 391 P.2d 449 (Alaska 1964).

8. We have borrowed the quoted passages above from a federal appellate court decision in Nee v. Linwood Sec. Co., 174 F. 2d 434, 437 (8th Cir. 1949), interpreting Rule 52(a) of the Federal Rules of Civil Procedure, which is identical with our own Civ.R. 52(a).

9. Atlantic Trust Co. v. Chapman, 208 U.S. 360, 373, 375–76, 28 S.Ct. 406, 52 L.Ed. 528, 534–36 (1908); Bowersock Mills & Power Co. v. Joyce, 101 F.2d 1000, 1002–03 (8th Cir. 1939); Colorado Wool Marketing Ass'n v. Monaghan, 66 F.2d 313, 315 (10th Cir. 1933); Baldwin v. Baldwin, 82 Cal.App.2d 851, 187 P.2d 429, 432 (1948); Andrade v. Andrade, 216 Cal. 108, 13 P.2d 676, 677 (1932); Brill v. Southernland, 30 Del. Ch. 467, 14 A.2d 408, 413 (1940); Hegarty v. American Commonwealth Power Corp., 19 Del.Ch. 1, 161 A. 915, 917 (1932); United Bonded Warehouse v. Jackson, 208 Ga. 552, 67 S.E.2d 761, 763 (1951); Prudence Co. v. Illinois Women's Athletic Club, 284 Ill.App. 210, 1 N.E. 2d 702, 705 (1936); Richey v. Brett, 112 Ohio St. 582, 148 N.E. 92, 93–94 (1925); 2 Clark, Receivers § 638, 638.1 (1959).

10. The request of the bank for the appointment of a receiver for the lodge was first ruled upon in 1955. At that time the District Court for the District of Alaska, Hodge, J., found, among other things, that the lodge as security was insufficient to pay the debt of Margaret Dual to the bank and ruled that the bank was entitled to the appointment of a receiver. First Nat'l Bank v. Dual, 15 Alaska 542, 546, 548 (D.Alaska 1955).

realize less loss therefrom. And finally, the bank was as negligent as the other parties in failing to keep a watchful eye upon the receivership properties. Under such circumstances it is only equitable that the bank should be held responsible for the receivership expenses above and beyond the proceeds of the marshal's sale.

For the foregoing reasons, the judgment of the trial court is affirmed.