Harold Stickler, Plaintiff-Appellee, v. Daniel F. McCarthy, et al., Defendants-Appellants.

Gen. No. 49,600.

First District, Third Division.

September 23, 1965.

David K. Anderson, of Evanston, for appellants.

Thomas E. Keane, of Chicago, for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

The plaintiff, Harold Stickler, an attorney at law, sued his former client the defendant, Daniel F. McCarthy, and others for the reasonable value of his services, including a bonus which he alleged was to be paid him based upon the success of his efforts. The services were rendered in behalf of the defendants in a 1957 Superior Court case captioned Pickett v. McCarthy, et al., and in collateral matters arising out of that cause. The other defendants were dismissed and a judgment was entered against McCarthy. The judgment was upon the pleadings and was entered as a sanction under rule 2, section 19–12(3) of the rules of

the Municipal Court of Chicago for the defendant's failure to produce documents pursuant to court orders and a deposition subpoena.

There are three principal issues in this appeal: (1) the propriety of the sanction imposed; (2) whether the court erred in denying leave to file a petition for a change of venue and (3) whether damages of $130,000 were properly assessed.

The Pickett v. McCarthy litigation grew out of a dispute over the parties' interest in various parcels of real estate acquired by McCarthy from 1949 through 1956. Pickett claimed an undivided one-half interest in certain of the parcels which were held in McCarthy's name or in the name of nominees. In July 1957 McCarthy engaged Attorney Stickler to represent him. According to Stickler's complaint which was filed in 1962, McCarthy agreed to pay him a minimum fee of $25 per hour to be billed currently and, upon the final disposition of Pickett's claims, a further fee for the reasonable value of his services. In addition thereto there was to be a bonus based upon the degree of his success and all other pertinent facts and circumstances. The complaint alleged that the property acquired by McCarthy was worth more than $2,000,000, that from July 1957 to August 1961 Stickler spent approximately 1,000 hours in McCarthy's behalf and that his services were highly successful in that Pickett's claims were settled out of court with substantial savings resulting to McCarthy. It was further alleged that McCarthy had been billed and had paid $17,875 on account of the minimum hourly charges but had refused to pay the further fee and bonus which amounted to $130,000.

McCarthy's answer stated that his only agreement was to pay Stickler $25 per hour and that this had been paid in full. He denied that Stickler spent 1,000 hours in his behalf, that Stickler's accomplishments were

5

highly successful or that the negotiated settlement represented a savings to him.

A chronological review of all the steps leading to the judgment, from the time the issues were joined until the judgment was entered, will best depict the situation facing the court at the time of its entry. A notice of a discovery deposition was served on McCarthy in April 1963. The notice called for the production of documents for the years 1948 to 1961 relating to 35 different transactions, loans, lawsuits, negotiations, settlements and legal services rendered by Stickler and by eight attorneys who had preceded him. McCarthy brought none of these documents to the deposition hearing which was held on May 9, 1963. His attorney stated that Stickler was entitled to the information he had requested but not at the expense of the disclosure of confidential matters, but that he and McCarthy were prepared to take any reasonable means to satisfy the request for discovery. Stickler replied that he was not interested in delving into confidential matters but that he was entitled to see the books of account concerning McCarthy's controversies with Pickett and himself, and that maybe some solution could be suggested. During the ensuing discussion and upon further questioning of McCarthy it developed that a ledger sheet existed for each of his projects on which there was detailed the various items of cost relating to the project and that, with a few exceptions, matters which he considered confidential had been eliminated from the sheets. Stickler asked if there was any reason why the ledger sheets could not be produced. McCarthy's attorney said he saw no impediment to producing them, and certain other documents that were desired, at the next hearing.

The next hearing was held May 15th. The promised ledger sheets were not produced. McCarthy's attorney said they refused to reveal private books and records

6

which in their opinion were irrelevant and immaterial to the issues of the lawsuit and that he would ask for a protective order from the court. He said the defendant would supply particular information but not books and records and if Stickler wanted them he would have to ask the court to compel their production. He said, however, that pertinent records which would satisfy Stickler would be made available to him, but with the understanding that confidential matters would remain so. The attorney further agreed to furnish information, including prices, about McCarthy's properties which were sold before and during the pendency of the litigation with Pickett but he refused to supply information about properties sold after the litigation had ended. The attorneys agreed that the question whether information in the latter category had to be supplied would have to be threshed out in court.

The parties maintained the same positions at subsequent depositions on June 5th, June 10th, June 27th, June 28th, July 10th and October 1st. Stickler repeatedly requested the ledger sheets and other books, records and accounts; he disclaimed any interest in McCarthy's private affairs or confidential records. McCarthy repeatedly refused to produce his books and records. He termed these confidential and said he would not expose these to Stickler's scrutiny.

On October 4th an order was entered setting the case for trial on December 17, 1963. On October 21st Stickler filed a motion, accompanied by his affidavit, for an order requiring McCarthy to produce the ledger sheets and other documents pursuant to the original notice of deposition and to compel him to answer certain listed questions which he had refused to answer at the depositions. The motion was set for hearing on November 4th. On that date the attorneys for the defendant withdrew and another attorney, by leave of court, entered his appearance. At the request of the

7

new attorney the hearing on the motion was continued to November 12th.

On November 12th the hearing was held on the pending motion and on the objections that were filed to it. The objections were on the grounds that much of the information and many of the documents referred to in the motion were privileged and did not relate to the merits of the matter in controversy. The court, after considering the motion, the affidavit supporting it and the objections, overruled the objections and entered an order directing McCarthy to produce the documents and answer the questions. The court also directed that the next deposition was to be held on November 15th in his own jury room and that it continue from day to day until completed.

Upon the resumption of the deposition, McCarthy stated that despite the court order he would not produce the ledger sheets themselves or certain other documents. He did produce photostatic copies of some of the ledger sheets, one of which had been admittedly changed by him after the order of November 12th. He suggested that if given more time he might be able to bring in material he and his attorney felt was relevant. Stickler complained that an examination revealed that the photographed ledger sheets did not contain information concerning the sales of the properties. McCarthy said it was not his practice to put such information on these sheets. He said that Stickler had had in his possession, from the very beginning, all the information that was needed and that he would not produce his cash journals which contained the sales figures on any further records.

After this, events moved in rapid succession to a climax. Stickler filed a motion on November 19th which related what had taken place on November 15th, set out that the photostatic copies of the ledger sheets contained no information about the sales of the prop-

8

erties involved in the Pickett-McCarthy litigation and requested a supplemental order requiring McCarthy to produce his cash journals and books of account. On the same day McCarthy moved to remove the case from the jury trial calendar. The affidavit of his attorney, filed in support of the latter motion, stated that he had not had enough time to analyze the long record, to study the many exhibits or to take necessary depositions; that he would be unable to prepare the defense because of these factors and because of obligations he had to other clients, and that the trial date was during the busiest season of McCarthy's business. McCarthy's motion was not ruled upon until November 27th. Stickler's motion was continued to November 21st.

On the 21st the court ordered McCarthy to produce his original ledger sheets and his cash journals insofar as they reflected his real estate interests or sales and contracts to sell such interests. The court set November 25th as the time and his own jury room as the place for the deposition to be resumed.

President Kennedy was assassinated on November 22nd, and the court house was closed for his funeral on November 25th. Because of this the business of all the courts was postponed until the following day. Stickler telephoned McCarthy and telegraphed his attorney that the hearing would take place on the 26th. The attorney sent a night letter from Minnesota to the judge and to the plaintiff explaining that he could not be present on the 26th. On the 26th the proceedings were put over until the 27th.

On the 27th McCarthy's attorney filed an additional affidavit in support of his motion to remove the cause from the trial calendar. After a full hearing this motion was denied. The court stated that the effect of the motion was to continue the case generally and that the court would not have permitted the substitution of attorneys on November 4th, just a few weeks before

9

the trial date and after months of litigation, if representations had not been made and assurances given that the new attorney would be ready to proceed on the date selected. In reference to the dispute over the documents the court remarked that McCarthy's position, that his records contained some personal entries and would disclose his technique of doing business, had no relevancy to their production; that the court had offered the offices of his court for taking the deposition and that he would be available in court or chambers to rule on questions concerning the records. McCarthy's attorney indicated that the records were in court but that in his and McCarthy's opinion the plaintiff had everything he was entitled to and they had no intention of letting him see the ledger sheets, the cash journals or other records. He said he would go over the records with the court and McCarthy but not with the plaintiff or his attorney. The court responded that the plaintiff and his attorney were men of integrity and responsibility and that it was their privilege to see the original records for the purpose of their lawsuit. When the court asked where the records were, the attorney parried, saying: "It is not that simple. . . . I think I can demonstrate to the court that we did give them everything they are entitled to." The court examined the transcript of the depositions and then said: "You will produce them" and "You will produce them in an original state and then show the court they are not applicable" and "I want the instruments produced, period." After further discussion the court attempted to terminate the hearing which had extended well into the noon hour by making the pronouncement: "Gentlemen, I must ask your indulgence. I have a motion in chambers and I have a motion call at 2:00 o'clock. I am saying whatever instruments are relative to this disposition I hereby order McCarthy to produce now, not tomorrow—right now." But McCarthy did not

produce the records. He continued to argue and to resist. Further colloquy took place during which Stickler volunteered to limit his request to those records showing the costs and sales prices of the properties listed in a quitclaim deed given to McCarthy by Pickett. The court directed that such a clarifying order be drafted and it was agreed that it would be presented at 9:30 a. m., November 29th.

On the 29th at the appointed hour the order directing the defendant to produce specific records was presented and signed. Neither McCarthy nor his attorney came to court. The order incorporated a provision that had not been mentioned at the prior hearing: that McCarthy's deposition be resumed on December 2nd at 9:30 a. m. in the jury room of the court. Because of this the plaintiff notified the defendant of the date, time and place of the next hearing.

McCarthy and his attorney did not appear for the deposition on December 2nd. Although Stickler's letter to McCarthy notifying him of the December 2nd date and enclosing a copy of the court's order was dated November 29th, and his telegram to McCarthy's attorney was sent the morning of the 29th, they claimed they did not receive the messages until December 2nd, too late to attend. The attorney telephoned Stickler's office on the 2nd but did not reach him. They did not talk to each other until December 3rd when it was agreed that the deposition would be resumed on December 4th.

Again, McCarthy and his attorney did not show up. On the afternoon of the 4th Stickler served notice that on the following day he would move that the defendant's answer be stricken and that judgment be entered on the pleadings. The man who served the notice was thereupon handed a notice by McCarthy's attorney that the defendant would present a petition for a change of venue on the same date.

11

At 2:00 p. m. on December 5, 1963, the plaintiff opened the hearing by presenting his motion. The motion was supported by his affidavit and by exhibits containing excerpts from the depositions showing McCarthy's refusal to produce his records in compliance with the first deposition notice and in compliance with the court orders of November 12th, November 21st and November 29th. A 15 minute recess was taken at the request of McCarthy's attorney, to give him time to read the affidavit and exhibits. When the hearing was resumed he said that he and McCarthy desired to file counteraffidavits; he also protested the provision in the November 29th order which set the next deposition for December 2nd on the ground that nothing had been said about this when the parties were in court on November 27th. The court said that counteraffidavits would not be relevant to the question before the court and went on to delineate the posture of the case:

> "Now let us get down to the issue. I see where this court has these alternatives: No. 1, enter judgment; No. 2, assess a substantial fine against Mr. McCarthy—or attorney's fees, rather, for the petitioner, for the inconvenience caused; or No. 3, enter a rule on Mr. McCarthy why he should not be held in contempt for failure to obey the court order."

At this juncture the defendant's attorney brought the petition for a change of venue to the court's attention for the first time. The court said:

> "We are not going to discuss the petition at this time. . . . The first order of this court's business is the violation of its order. Any other motions will be subsequently taken."

The court then struck McCarthy's defense and entered judgment against him on the pleadings. He directed

12

the plaintiff to prepare a draft order. The plaintiff's counsel said he would have the order typed and would bring it back within the hour. Pertinent parts of the order are as follows:

"This cause coming on to be heard upon the motion of the plaintiff pursuant to this Court's Rule 2, Section 9–12 . . . and the court having considered an affidavit of plaintiff and exhibits attached thereto which were presented at the hearing in support of said motion . . . and the court having heard arguments and advice of counsel and being fully advised in the premises.

"FINDS:

"1. That defendant Daniel F. McCarthy since the inception of the discovery deposition taken from him, commencing on May 9, 1963, has unreasonably, willfully and contumaciously failed and refused to produce his books of account and other records . . . and to furnish information and respond to proper questions . . . in disregard to the requirements for the production of said documents, as set forth in the original notice served upon him . . . and in disregard of the rules of this court . . . and in violation of the orders of this court . . .; that none of said records or information so . . . withheld was privileged under the rules of this Court;

"It is therefore, Ordered, Adjudged and Decreed:

"1. That the defense . . . be and hereby is stricken and judgment be and hereby is entered in favor of the plaintiff and against defendant . . . ;

"2. That . . . plaintiff do have and recover of and from defendant Daniel F. McCarthy the sum of One Hundred Thirty Thousand Dollars ($130,-

13

000.00), and his costs and charges in this behalf expended and have execution therefor; . . . ."

From this detailed, sequential review of the record the defendant's noncompliance with the deposition notice and the court's orders is seen as prolonged, repeated and deliberate. The paramount questions are whether it was justifiable or excusable.

The plaintiff was suing for the reasonable value of his services and for a bonus predicated upon the success of his efforts. The cost of the properties bought by the defendant, the prices at which they were sold, the resulting profit or loss and the value of the properties retained, were important ingredients in establishing the allegations of his suit. He claimed that the defendant's records were the only source of much of this information and repeatedly sought their production.

The defendant just as often refused to produce them. He maintained that to do so would disclose nonrelevant business and personal transactions; that the discovery notice and court orders were too broad; that the only discovery information the plaintiff was entitled to was that concerning the properties described in the complaint in the Pickett v. McCarthy litigation and that this information should be further limited (because of Stickler's own complaint) to the property acquired by him in the years 1949 to 1956. He contended that the plaintiff had all necessary information as evidenced by the plaintiff's deposition exhibits 5 and 6, and that the plaintiff already knew all that was essential because he had been the defendant's attorney during four years of the Pickett controversy. He argues here that he did not have to obey the first two court orders because the plaintiff abandoned these by requesting a third order. He further argues that his refusal to furnish information concerning properties acquired

14

by him before 1949 and after 1956 was reasonable, and that the sanction should not have been applied since he sincerely believed his refusal was justified.

■ There is nothing in the record, except the defendant's constantly iterated assertions, to support his contention that the records were confidential and privileged. His unsupported assertions are not enough to exempt him from disclosing the documents.

The notice and the orders were clear and specific. The notice was served under the rules of the Municipal Court (rule 2, section 19–8) which authorized the plaintiff to serve notice demanding the defendant to produce documents the same as if he had been served with a subpoena; the orders of the court were entered after both parties had presented their viewpoints.

The defendant's objections to the materiality and relevancy of the requested records were heard by the court on November 12th when the plaintiff made his first motion for a compliance order. The court overruled the objections and there is nothing in the record to support the argument that the court erred in doing so.

The deposition exhibits 5 and 6 which the defendant asserts contained all the information the plaintiff needed are not in the record. We know these exhibits pertained to some of the property but we have no means of appraising their content or sufficiency. The trial court decided that the exhibits were insufficient and in the absence of a complete record we must presume his ruling was correct.

■ In arguing that the plaintiff, as his former attorney, already had all the information he needed the defendant fails to distinguish between information and proof. The plaintiff may have known some of the facts but this would not suffice; in the prosecution of his lawsuit he would be obliged to prove these facts by offering evidence substantiating his

15

claim. The plaintiff was entitled to this proof; he had the right to pursue his search for it; he had the right to discover not only what would be admissible at the trial but to discover leads to what would be admissible. From the record before us it appears that the defendant's books would be the very best proof and would furnish the very best sources to further proof.

The argument that the plaintiff abandoned the earlier orders of the court by obtaining additional ones is without merit. The defendant did not obey the first order before he knew there would be a second; he did not observe the second before the third was obtained, and did not comply with the third either as to his records or as to attending subsequent deposition hearings.

The defendant justifies his stand as reasonable and sincere. It seems to us to have been arbitrary and willful. He not only failed to produce obviously relevant records and to answer proper questions, but he defied written and oral court orders to do so, and repeated his defiance in open court. Despite his protests at the deposition hearings, he never sought a protective order from the court as he could have under Municipal Court rule 2, sec 19–5(2) and Supreme Court rule 19–5(2). He exculpates himself from not seeking such an order by censuring the plaintiff for being dilatory in seeking a compliance order. At no time, although some of the deposition hearings took place next to the court room, did he ask the court to rule on his objections. He once said this would be done but he did not pursue his own suggestion. From the very beginning he seems to have had no intention of showing his records. Throughout the depositions there was evasion and procrastination. It was not until November, when the inevitable denouement was looming menacingly ahead, that he even suggested to the court that he

16

might let the court see the records. But even then he was adamant in his refusal to show them to the plaintiff. He persistently insisted that he himself was to be the sole judge of what was relevant. He took this position: "You already have what I think you should have and I am not going to give you anything else. You are not going to look at my books and records to see if I am right or wrong in what I have decided is relevant."

The defendant overlooks his own contumacy and, in his briefs, berates the trial judge. He charges that the judge was unable to understand and had no intention of learning what was involved in the proceeding, and that he violated his promises to limit the production of documents and to rule on what was relevant. Adverbs such as "vindictively," "arbitrarily," "capriciously," and "abruptly" are used to characterize the judge's conduct. His remarks are described as being "shouted" and "stormed." To bolster the latter descriptions punctuation is distorted: exclamation marks are substituted for periods and are placed after the judge's remarks in the defendant's briefs although there are none in the record. The defendant attempts to besmirch the judge by implying that the plaintiff's attorney was employed for the purpose of influencing him, that the attorney was thus able to procure the orders he desired and that when the attorney made an objection the judge obligingly "snapped" his decisions.

The record belies these charges and insinuations. The judge demonstrated a competent grasp of the issues. He does not appear to have been vindictive, arbitrary, capricious or abrupt. He treated both sides courteously, considerately and fairly. He postponed hearings for the convenience of the defendant's counsel, he placed his jury room at the disposal of the parties and made himself quickly available to rule

17

upon their disputes. He read the transcripts of the depositions, listened to the arguments and made his decisions.

What the judge did was to insist upon compliance with his orders. When they were violated and a motion was made for their enforcement he acted firmly in imposing a sanction under Municipal Court rule 2, sec 19–12(3) and the comparable Supreme Court rule 19–12(3), Ill Rev Stats chap 110, par 101.19–12(3) (1963). These rules provide many sanctions for failing to comply with the rules pertaining to pretrial discovery procedures or court orders entered under the discovery rules. The most severe of these sanctions is the following:

> "If a party . . . fails to comply with any order entered under said rules, the court may, on motion . . . order . . . that all or any part of his pleadings be stricken and judgment rendered on the remaining pleadings in the case. . . ."

The imposition of this sanction has been approved in several cases. Kocis v. Kocis, 47 Ill App2d 68, 197 NE2d 460; Granger v. Turley, 20 Ill App2d 488, 156 NE2d 610; Sager Glove Corp. v. Continental Cas. Co., 19 Ill App2d 568, 154 NE2d 833; Harris v. Oxford Metal Spinning Co., Inc., 315 Ill App 490, 43 NE2d 186.

The appropriate sanction to be imposed for noncompliance with a discovery order is discretionary with the trial court. Rosales v. Marquez, 55 Ill App2d 203, 204 NE2d 829; Ferraro v. Augustine, 45 Ill App2d 295, 196 NE2d 16. The discretion is broad and its exercise will not be interfered with unless it appears that it has been abused. Based upon the record before us we must hold that the evidence requested by the plaintiff was material to his case, that it was not privileged against disclosure, that the defendant's re-

fusal to accede to the orders of the court was contumacious and that he acted in bad faith. We believe that there was no abuse of discretion and that this was a proper case for the court to strike the defendant's answer and to enter judgment against him.

■■ The defendant contends that his petition for a change of venue should have been considered and granted; that the court erred in not permitting the petition to be filed and that the court was without power to enter any order after the petition was presented. When the petition came to the judge's attention he refused to consider it and proceeded with the business at hand. Although the court's procedure was erroneous the ultimate result was not. Leave to file the petition should not have been denied; the petition itself should have been. The court should have considered the petition and should have ruled upon it as soon as it was presented, to him because if a petition is in correct form and is timely filed and if proper notice has been given, it must be granted and any order entered after its presentation is a nullity.

■■■ The defendant, however, was not harmed by the incorrect procedure because if it had been considered it would have had to be denied. It was not timely filed. To be filed in time a petition must be offered at the earliest practical moment. People v. Lawrence, 29 Ill2d 426, 194 NE2d 337; People v. Chambers, 9 Ill2d 83, 136 NE2d 812; Jones v. Jones, 40 Ill App2d 217, 189 NE2d 33. It is not filed in apt time if the court has ruled on a substantive issue in the case or if there has been a formal hearing that will be binding on the parties and affect the court's decision on the merits. Swanson v. Randall, 30 Ill2d 194, 195 NE2d 656; Steiner v. Steiner, 44 Ill App2d 355, 194 NE2d 508; Miller v. Miller, 43 Ill App2d 214, 193 NE2d 105. The defendant's petition was not brought

19

to the court's attention until the court had reached its conclusion on the plaintiff's motion and had announced three alternative decisions emanating from that conclusion—each one adverse to the defendant and one of the three being the entry of judgment against him. A party cannot probe the attitude of a court on the issues in a case and finding it adverse, ask for a change of venue; and there is no issue more substantive and no hearing more binding than the determination of judgment.

The final question concerns the assessment of damages in the amount of $130,000. The plaintiff's claim was for unliquidated damages. Such damages could not be determined without evidence as to what services were performed, what these were worth over and above the $25 an hour that had been paid, how much time was put in, how difficult the problems were, what was accomplished and what benefit accrued to the defendant. The question is whether the court heard the evidence required to fix damages.

Neither the defendant nor his attorney was present when the final judgment was entered; there is no transcript of what took place and the entries made on the Municipal Court's half sheet are of no help. First of all a half sheet is not part of the official court record (Dale Jewelers, Inc. v. Walker, 44 Ill App 2d 224, 194 NE2d 509) and it could not prevail over the written order; secondly, the entries on the half-sheet are contradictory.

Ordinarily, in the absence of a report of proceedings there is a presumption that the judgment was supported by the evidence. Ras v. Allan Anthony Elec. Corp., 55 Ill App2d 176, 204 NE2d 797. In addition to this presumption the final order said that "the court was fully advised in the premises." This court has held that if the trial court signs an order which contains these words we would conclude, in the

absence of any contrary indication in the order or in the record, that the court heard adequate evidence, received enough information or listened to sufficient law and argument, as the necessity of the particular case required, to enable the court to reach what it believed was the right decision on the issue presented. Smith v. Smith, 36 Ill App2d 55, 183 NE2d 559.

In the present case there are indications in both the order and the record that the court assessed the damages without hearing evidence.

 The order says that the court considered the affidavit and the exhibits that had been presented at the hearing for judgment on the pleadings. Nothing in the affidavit, attached exhibits or the documents incorporated therein by reference, relate to evidence pertaining to damages. The order also says that the court heard the arguments and the advice of counsel. Nothing is said about hearing evidence on the issue of damages. The order states three things the court did. If the court heard evidence it is logical to suppose that this would have been mentioned. In Prudence Co., Inc. v. Illinois Women's Athletic Club, 284 Ill App 210, 1 NE2d 702, the order of the trial court enumerated the things the court did and hearing evidence was not among them. Because of this, the reviewing court inferred that the trial court had not heard evidence. We draw the same inference in this case.

We draw a like inference from the facts in the record. It would be most surprising if the plaintiff were ready to prove up his case so soon after the first hearing ended. He had insisted in his arguments to the court and throughout the depositions that information concerning the value of McCarthy's property, both sold and unsold, and the profit made on the property sold were essential to his suit. He said he needed proof of the profit that may have been made on the property sold; that he did not know what property had

21

not been sold or its value, and that the value could only be ascertained through appraisals which would take several weeks. Up to the moment the court pronounced judgment he maintained that he did not have this essential information. If he did not have it at the conclusion of the first hearing it is not likely that he had it at the second that same afternoon.

The court recognized the need for such evidence before damages could be assessed. At the hearing on November 27th the court had said:

> "Now, the descriptions of the property, the acquisition and sales price is all material, because it has to do with the fee involved here. . . . If I have to sit here and determine how much of a fee this man is entitled to, surely I have to take into consideration that if you sell the property, for example a million dollars. . . . I would have to take into consideration the million dollars that it was sold for, and the amount of work done, and arrive at a fair and reasonable attorney's fee."

The fact that the damages were fixed at the exact figure prayed for by the plaintiff is another factor that convinces us no evidence was heard. It would be surprising if the evidence substantiated to the penny the plaintiff's estimate for a variable item such as the reasonable value of his services and for such a highly intangible item as a bonus.

Moreover, in asking for $130,000 damages the plaintiff alleged that he had spent approximately 1,000 hours in the defendant's behalf. Damages in this precise amount would presuppose proof of this allegation. How this could be done would be interesting to know in view of his statement in the same complaint that his contract with the defendant for a minimum fee of $25 an hour had been paid in full and that he had received $17,875. If this statement is accurate he billed Mc-

Carthy and was paid for 715 hours of work—285 hours less than the 1,000 upon which the $130,000 claims were predicated.

The conclusion is inescapable that the court heard no evidence but rather accepted without question the plaintiff's own estimate of the value of his services and the amount of his bonus. This should not have been done. Although the defendant knew the judgment in its final form was to be entered later that afternoon and he did not wait or return to the courtroom, and although he had an appeal bond fixed before he left the courtroom and made no protest when the plaintiff requested that the court consider damages in the amount of $130,000 in fixing the bond, nevertheless a judgment for unliquidated damages cannot be entered without evidence establishing the fair amount of those damages. His default for want of an answer does not admit the plaintiff's allegation of damages. He cannot contest the cause of action but he may appear and defend on the issue of damages. Elfman v. Evanston Bus Co., 27 Ill2d 609, 190 NE2d 348; Tierney v. Szumny, 257 Ill App 457.

The defendant cannot justly complain that a jury was not called to settle the question of damages. Although he had filed a jury demand, and the plaintiff had not, he did not press for a jury trial after his answer was stricken. However, we believe it advisable that upon remand the court should exercise the discretion given it following a default (Ill Rev Stats 1963, c 110, par 71) and, if so requested by the defendant, impanel a jury to assess the damages.

The judgment against the defendant on the issue of liability is affirmed. The judgment on the issue of damages is reversed. The cause is remanded for the assessment of damages in a manner not inconsistent with the views expressed in this opinion.

Affirmed in part, reversed in part and remanded with directions.

SULLIVAN and SCHWARTZ, JJ., concur.