**Alejandro Reyes Alverio, et al., Plaintiffs-Appellants, v. Lenwood Dowery, et al., Defendants-Appellees.**

**Gen. No. 51,781.**

First District, Third Division.

December 27, 1968.

Rehearing denied January 16, 1969.

Peter S. Sarelas, of Chicago, for appellants.

Raymond F. Simon, Corporation Counsel, of Chicago (Marvin E. Aspen and Joseph N. Lascaro, Assistant Corporation Counsel, of counsel), for appellees.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiffs bring this suit against four police officers and a bail bondsman for false arrest and imprisonment. At the close of plaintiffs' case the court directed verdicts and entered judgment thereon for the defendants. An appeal was taken to the Supreme Court of this State and that court transferred the case here on finding that no substantial constitutional issue was presented.

Some of the Points and Authorities set forth in the plaintiffs' brief are argumentative and verbose and set

forth principles of law which are not contested and have no bearing on the outcome of this appeal. Plaintiffs' attorney is amply capable, as revealed in his oral argument before this court, of stating his points and making his argument lucidly and succinctly. It would serve both client and the court, now burdened with a great increase in the number of appeals which come before it, if he would apply the same skill to the preparation of his briefs.

The basic issue is whether the trial court properly directed a verdict against plaintiffs within the rule announced in Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504. The facts follow.

On June 30, 1957, at about 1:45 p. m. plaintiffs were taken into custody by Chicago Police Officers Michael Keegan and William Ryan. Keegan, called as an adverse witness under section 60 of the Civil Practice Act, testified that he and Ryan were on duty as detectives at the time in question, that they were in plain clothes and riding in an unmarked car. They observed a group of men playing dice on the sidewalk at 310 South Bell Street in Chicago, stopped their car and approached the men. According to Keegan the group broke up as he approached them and some of the participants grabbed money from the sidewalk and fled. The officers apprehended the plaintiffs but did not recover any dice or money at the scene. Plaintiffs were arrested without a warrant on the charge of gambling.

The officers took plaintiffs to the Warren Avenue Police Station at about 2:30 p. m. and were immediately called away to investigate a double murder and suicide. They testified that they advised the lockup keeper that plaintiffs were under arrest for gambling. The officers proceeded to the investigation of the other case and returned to the station at about 5:00 p. m.

127

Earl Winter, another defendant herein, testified that on June 30, 1957, he was working as part of a team with Keegan and Ryan. When the arrests were made he was at the police station working on reports and the only time he saw plaintiffs was when they were brought into the station. He did not know when they were booked nor what was done in connection with their arrests. Winter stated that Keegan and Ryan did not tell him what charges had been placed against plaintiffs and that he did not know the amount of bail set for them.

The desk sergeant John Slechter was also made a party defendant and when he was called as a witness he testified that he first saw plaintiffs at about 2:30 a. m. on July 1, 1957, twelve hours after they were brought to the station. He stated that he did not set their bail as the amount of the bond in such cases was set by court rule, the applicable bail being $10 for each prisoner. He accepted a bail bond posted by the defendant bondsman Lenwood Dowery and released the six prisoners. No cash was involved since the bond was posted by a bondsman. Slechter said he had never seen the plaintiffs prior to booking them and releasing them from custody. He further testified that he did not remember who told him to book the plaintiffs, but that Dowery talked to him about bonding them. Slechter testified that he did not talk to plaintiffs nor did anyone else talk to them and that plaintiffs were booked pending clearance of fingerprints at the Bureau of Identification, which is normal and customary police procedure.

The complaints charging plaintiffs with gambling were admitted into evidence and although they were not signed by the arresting officer Michael Keegan, they bear the jurat of John Slechter, the desk sergeant. The complaints are date stamped July 12, 1957, a date eleven days subsequent to the booking. They fail to show the amount of bail or the means by which it was posted.

128

Alejandro Alverio, one of the plaintiffs, testified that on the day of the arrests he had just returned from church and was conversing with a group of people when the policemen approached them. He stated that the policemen drew their guns and said, "Give me the dice." Alverio denied having any dice or participating in any gambling. Plaintiffs were taken to the police station where they were fingerprinted immediately. The other plaintiffs likewise testified that they had not been gambling and that they were incarcerated for a period of twelve to thirteen hours. It further appears from the testimony of plaintiffs and of Officer Keegan that plaintiffs were not allowed to make any telephone calls during that time.

Release of plaintiffs was obtained through the aid of Angel Flores, a friend who had heard about the arrests. He went to the police station at about 4:30 on the afternoon of the arrests and stayed until plaintiffs were released at about 3:00 o'clock the next morning. He testified that Dowery asked for $100 for bail plus $12 to expedite the processing of plaintiffs' fingerprints. Dowery allegedly stated that unless the fingerprints were immediately cleared with the Identification Bureau the plaintiffs would have to stay in jail another day. Flores gave Dowery the $112 and Dowery gave him a receipt for $50, which receipt was admitted into evidence.

We will summarize the evidence presented by plaintiffs. They were arrested on Sunday afternoon and kept in custody twelve to thirteen hours on disorderly conduct charges. The complaints against them were unsigned but were nonetheless notarized by the desk sergeant. The sum of $112 was paid to the bondsman Dowery, notwithstanding the fact that the total bond set by court rule would have amounted to $60 in cash. It is also clear from the undisputed testimony that the entire procedure was relegated to Dowery by the police and

129

that the police at no time explained the method by which plaintiffs could make bail and obtain their release.

■ Verdicts may be directed only in those cases in which all the evidence when viewed in its aspect most favorable to the opponent so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504.

■■ The elements of the tort of false arrest and imprisonment are determined to some extent by the statutory authority granted to police officers and private persons under the Criminal Code. At the time of the arrests in the instant case an officer was authorized to make an arrest without a warrant for a criminal offense committed or attempted in his presence or when a criminal offense was in fact committed and the officer had reasonable grounds for believing the person to be arrested committed that offense. Ill Rev Stats, c 38, § 657 (1957). Where an officer makes an arrest without a warrant for an alleged crime which has not been committed in his presence, such arrest is illegal if the crime has not actually been committed. McKendree v. Christy, 29 Ill App2d 195, 172 NE2d 380. The liability of the arresting officer terminates however when he surrenders custody of the prisoner to investigating detectives or the lockup keeper. Alvarez v. Reynolds, 35 Ill App2d 54, 181 NE2d 616.

■ With respect to arresting officers Keegan and Ryan there exists a question of fact as to whether or not the crime of gambling was committed in their presence. There was ample evidence from which the jury could have found that the offense was not in fact committed, in which event plaintiffs would have been entitled to recover. Green v. No. 35 Check Exchange, Inc., 77 Ill App 2d 25, 222 NE2d 133.

130

█ █ Proceeding to the matter of the detention of plaintiffs pending their release on bail, it is clear that under our law persons who are arrested may not be detained without reasonable cause and shall be afforded the opportunity to be promptly released on bail. Fulford v. O'Connor, 3 Ill2d 490, 121 NE2d 767. The amount of bail was scheduled at $10 each and Slechter as Sergeant of Police was authorized to set such bail and release the prisoners. Ill Rev Stats, c 37, § 406 (1955). That would ordinarily have been a simple procedure, particularly in the middle of the afternoon when it appears that an acquaintance of the prisoners was present and prepared to post a cash bond. That procedure was not followed. Instead the police relegated the entire matter to Dowery and there is testimony that he was paid $112 for the release of the plaintiffs. There was sufficient evidence of conspiracy between the bondsman Dowery and the police officers Ryan, Keegan and Slechter to require the submission of the issues to a jury. Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504.

The only other point of substance raised by appellants is that the court erred in refusing to admit Municipal Court "half-sheets" into evidence as proof of the final disposition of the criminal charges brought against plaintiffs. A half-sheet is a document in which the motions, orders and proceedings in a case are listed for ready reference. It is included in the file for the convenience of the court and the parties but is not part of the official court record. Stickler v. McCarthy, 64 Ill App2d 1, 212 NE2d 723; Dale Jewelers v. Walker, 44 Ill App2d 224, 194 NE2d 509. On remand the plaintiffs should observe the better practice of presenting official court records.

█ The evidence did not reveal any connection between the defendant Earl Winter and the alleged tort and accordingly the court properly directed a verdict in favor of Winter.

131

The judgment is reversed as to defendants Keegan, Ryan, Slechter and Dowery and the cause is remanded for retrial and for such other and further proceedings as are not inconsistent with the views herein expressed.

Judgment reversed as to defendants Keegan, Ryan, Slechter and Dowery and cause remanded for new trial.

Judgment for Winter affirmed.

DEMPSEY, P. J. and SULLIVAN, J., concur.